AMERICAN FABRICS COMPANY *v.* UNITED TEXTILE
WORKERS OF AMERICA, LOCAL 240
(5111)

BORDEN, DALY and O'CONNELL, Js.

Argued October 6—decision released November 24, 1987

*William H. Narwold,* for the appellant (plaintiff).

*John M. Creane,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the judgment of the trial court denying its application, filed pursuant to General Statutes § 52-418, to vacate an arbitration award rendered under a collective bargaining agreement between the parties. The plaintiff claims that the court erred (1) by applying an improper scope of review to the award, (2) by disregarding and modifying the plain language of the parties' agreement regarding the timeliness of the defendant's grievance, (3) by disregarding and modifying the plain language of the agreement regarding the power of the arbitrator to order the plaintiff to increase starting wage rates, and (4) by disregarding and modifying the plain language of the agreement regarding the time period covered by the award. We find error in part.

The facts are not in dispute. The plaintiff and the defendant were parties to a collective bargaining agreement effective May 16, 1982, through May 15, 1985. Article XVII, Section 4 of the agreement provided for certain wage increases on May 16, 1982, May 16, 1983, and May 14, 1984. The wage increases were to be

applied to the "then existing wages." Pursuant to its interpretation of this provision, the plaintiff on each anniversary date of the agreement increased the wages of certain of the employees then employed by it, but did not increase the wage rates at which new employees were hired or the minimum wage rates for the various job classifications. Those wage rates remained constant.

On February 22, 1985, the defendant filed a grievance that the plaintiff had violated Article XVII, Section 4 of the agreement by failing to apply the specified wage rates to the starting and minimum wage rates. Article IX, Section 2 of the agreement provided, in pertinent part, that unless a grievance were presented to the plaintiff no more than ten working days "from the occurrence of the condition giving rise the grievance" it would "not thereafter be considered a grievance under this agreement . . . . " After the defendant's grievance was denied, the defendant submitted the grievance to arbitration pursuant to Article XI of the agreement. That article provided, in pertinent part, for arbitration "as to the meaning and interpretation of particular provisions" of the agreement. It also provided that the arbitrator had "no power . . . to add to, subtract from or modify this Agreement, or to establish or change any rates of pay or wages," and that the arbitrator had "no power . . . to make any awards for a period which transpired before a dispute was first submitted by the Union to the Company, nor shall the Arbitrator grant any relief extending beyond the termination date of the contract."

The parties did not agree on the specific language of the submission. The arbitrator, therefore, framed it as follows: "Did the [plaintiff's] failure to apply the general wage increases listed in Article XVII, Section 4, to the starting wage rate and/or the minimum wage rate for various job classifications [constitute] a viola-

tion of that provision? If so, what should be the remedy?" On November 21, 1985, the arbitrator rendered an award finding that the grievance was timely, and that the plaintiff had violated the agreement. The arbitrator directed the plaintiff to increase the starting wage rate and each job classification minimum rate, in specified amounts, effective January 15, 1985, and to make reimbursement to any eligible employees retroactive to January 15, 1985.

The plaintiff applied to the trial court to vacate the award. The court denied the plaintiff's application. This appeal followed.

I

The plaintiff first claims that the trial court erred by applying an improper scope of review to the arbitrator's award. Specifically, the plaintiff claims that the court applied a state law scope of review; see, e.g., *Board of Education* v. *Local 818,* 5 Conn. App. 636, 639–40, 502 A.2d 426 (1985) (comparison of award with submission); rather than a federal law scope of review which, the plaintiff contends, is required because the plaintiff is engaged in interstate commerce. See, e.g., *United Steelworkers* v. *Enterprise Wheel & Car Corporation,* 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960) (under federal law, the award must "[draw] its essence" from the agreement); *Hudson Wire Co.* v. *Winsted Brass Workers Union,* 150 Conn. 546, 553, 191 A.2d 557 (1963) (same). We decline to consider this claim because it was not presented distinctly to the trial court.

The trial court did state that a "challenge to an award on the ground that the arbitrator has exceeded his power is limited to a comparison of the award with the submission. *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584 [440 A.2d 774 (1981)]." In addition, however, the court specifically cited *Board of Education*

v. *Local 818,* supra, to support its statement that "the scope of judicial review is very narrow, since the courts favor arbitration as a means of settling differences. The award is to be upheld unless the award clearly violates General Statutes § 52-418."

In *Board of Education* v. *Local 818,* supra, we held that, pursuant to an unrestricted submission, generally "[i]f the award conforms to the submission, the arbitrators have not exceeded their powers." Id., 639–40. We also held, however, that there are "limited circumstances in which a court will conduct a broader review of an arbitrator's decision." Id., 640. These circumstances are where a party claims "that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement . . . ." Id. In such a case, "this court will review the award only to determine whether it 'draws its essence from the collective bargaining agreement.' " Id., quoting *United Steelworkers* v. *Enterprise Wheel & Car Corporation,* supra, 597. In *Board of Education* v. *Local 818,* supra, therefore, we reconciled any apparent inconsistency between the state and federal standards of review.

As the defendant correctly points out, the plaintiff did not present distinctly to the trial court the claim that the plaintiff's involvement in interstate commerce required the court to employ a scope of review more searching than is ordinarily required. The plaintiff's trial brief is bereft of anything resembling such a claim. It is true that the defendant's trial brief refers to *Hudson Wire Co.* v. *Winsted Brass Workers Union,* supra, and to *Board of Education* v. *Local 818,* supra, but neither party claimed to the court that the plaintiff's purported involvement in interstate commerce triggered a different scope of review.

Even if we were to find error in the trial court's scope of review, however, a remand to the trial court would

not necessarily be required. The plaintiff's other claims of error specify the ways in which, the plaintiff argues, the award does not draw its essence from the agreement. We now address those claims.

## II

The plaintiff next claims that the court erred by disregarding the plain and unambiguous language of the agreement regarding the timeliness of the grievance filed by the defendant. Specifically, the plaintiff claims that the grievance, filed on February 22, 1985, was untimely under Article IX, Section 2 of the agreement, because it was not filed within ten days of "the occurrence of the condition giving rise to the grievance," namely, the plaintiff's purported failure, in May, 1982, May, 1983, and May, 1984, to increase the starting and minimum wage rates. We disagree.

"We have held that the failure to file a timely grievance is a question of procedure stemming from the agreement itself." *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 10 Conn. App. 611, 617–18, 525 A.2d 112, cert. granted, 204 Conn. 806, 528 A.2d 1153 (1987). With respect to that issue, the court is not bound by the arbitrator's decision and is free to examine the question anew. Id., 615–18. Applying this enhanced scope of review, we agree with the finding of the arbitrator that the grievance was timely filed.

Where a grievance concerns a discrete, isolated event, such as a discharge of an employee, "the occurrence of the condition giving rise to the grievance" is easily marked. Where, however, the grievance concerns, as in this case, the failure of the employer to apply a general wage increase to the starting wage rates of new hires, the boundaries of "the occurrence of the condition" are less clear. In such a case, no particular employee is poised to alert the union to the violation. Moreover, the plaintiff's argument proves too

much, because it would also apply to the plaintiff's failure to pay the annual wage increases to the employees who are not at the starting or minimum wage rate. That, in turn, would mean that if a grievance challenging such a failure were not filed within ten days of the contract anniversary date, the plaintiff could not be compelled by the grievance and arbitration procedures to make its employees whole. We do not believe that the parties intended such a result. See *Game-A-Tron Corporation* v. *Gordon,* 2 Conn. App. 692, 694–95, 483 A.2d 620 (1984) (between two possible interpretations of a contract, court prefers the more equitable and rational interpretation). We conclude, therefore, that the alleged violation was continuing, and that each day's failure to pay a wage increase required by the agreement was a new violation which triggered a new time period for filing a grievance. Thus, the grievance was timely filed.

The cases on which the plaintiff relies are inapplicable. They involve either a statute of limitations governing a wrongful discharge claim or an action for breach of a collective bargaining agreement; see, e.g., *International Association of Machinists & Aerospace Workers, AFL-CIO* v. *Aloha Airlines, Inc.,* 790 F.2d 727, 733–38 (9th Cir.), cert. denied, 479 U.S. 931, 107 S. Ct. 400, 93 L. Ed. 2d 354 (1986); *West* v. *ITT Continental Baking Co.,* 683 F.2d 845 (4th Cir. 1982); or an application to vacate an arbitration award based on a clear-cut, discrete event, rather than a claim of a continuing violation by refusing to pay wages required by the collective bargaining agreement. See, e.g., *Detroit Coil Co.* v. *International Association of Machinists & Aerospace Workers, Lodge #82,* 594 F.2d 575 (6th Cir.), cert. denied, 444 U.S. 840, 100 S. Ct. 79, 62 L. Ed. 2d 52 (1979).

## III

The plaintiff's third claim is that the court erred in upholding the award, because the award modified the plain and unambiguous language of the agreement prohibiting the arbitrator from "establish[ing] or chang[ing] any rates of pay or wages . . . ." The plaintiff does not claim that the award fails to conform to the submission. Rather, it claims that the arbitrator's remedy is inherently inconsistent with the agreement, and does not draw its essence from the agreement. This claim is without merit.

The award is based on the provision of the agreement authorizing arbitration "as to the meaning and interpretation of particular provisions" of the agreement, namely, the provision regarding annual increases of "then existing wages." It is clear from the lengthy and reasoned decision of the arbitrator, which we have examined; *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 292, 377 A.2d 323 (1977); that his award draws its essence from the agreement. *Board of Education* v. *Local 818,* supra. We require no more. Indeed, the plaintiff's position would preclude the most effective remedy for the plaintiff's violation of its obligation to institute the wage increases required by the collective bargaining agreement. That would eviscerate the grievance and arbitration process, on which the parties agreed.

## IV

We do find merit to the plaintiff's final claim, namely, that the court erred when it upheld the arbitrator's time limits on the award. The award ordered the plaintiff to increase the starting and minimum wage rates for each job classification effective January 15, 1985, and to reimburse employees for lost wages retroactive to that date.

There are two fundamental flaws in this award. Both involve a failure of the award to draw its essence from the agreement. *Board of Education* v. *Local 818,* supra.

First, there is simply no justification for the date of January 15, 1985. We can find none in the collective bargaining agreement, or in the arbitrator's decision. Nor has the defendant been able to point us to any reasonable justification for that particular date. Thus, that particular part of the award cannot stand.

The agreement provides that the grievance must be filed within ten days of the occurrence of the condition giving rise to the grievance. The parties do not quarrel with the arbitrator's reasoning that, with respect to the ongoing failure of the plaintiff to pay required wage increases, this provision operates as a limit on the plaintiff's retroactive liability to a ten day period preceding the filing of the grievance. The grievance in this case was submitted to the plaintiff on February 22, 1985. Thus, the retroactive date in the award should have been February 12, 1985.

Second, the arbitrator did not adhere to the plain command of the agreement that he may not "grant any relief extending beyond the termination date of the contract." Ordinarily, when an arbitrator renders an award during the life of a collective bargaining agreement containing such a provision, it would be understood that the award would only be effective until the end of the contract. Here, however, the award was rendered on November 21, 1985, after the agreement had expired. The award should have made clear that it concerned wage rates only through May 15, 1985, the termination date of the collective bargaining agreement.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.