STATE OF CONNECTICUT *v.* AFSCME, AFL-CIO, COUNCIL 4, LOCAL 2663
(SC 16409)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 14—officially released July 31, 2001

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Thomas P. Clifford III*, assistant attorney general, for the appellant (plaintiff).

*Barbara J. Collins*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The issue raised by this appeal is whether the trial court properly granted an application to confirm an arbitration award granting overtime pay to staff attorneys for the commission on human rights and opportunities (commission). The plaintiff, the state of Connecticut, appeals from the judgment of the trial court denying its application to vacate the arbitration award and granting the application to confirm the award filed by the defendant, American Federation of State, County and Municipal Employees, AFL-CIO, Council 4, Local 2663.[1] The plaintiff contends that the trial court improperly confirmed the arbitrator's award granting overtime pay to commission staff attorneys because: (1) the arbitrator erroneously interpreted

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

the statutory overtime exemption provided in the federal Fair Labor Standards Act, title 29 of the United States Code, § 201 et seq. (act); and (2) the arbitrator's award violated the public policy prohibiting overtime compensation for professional employees. We conclude that the trial court properly confirmed the award, and, accordingly, we affirm the judgment of the trial court.

The following undisputed facts are relevant to this appeal. The plaintiff and the defendant entered into a collective bargaining agreement (agreement) that covered the period from July 1, 1994 through June 30, 1999. The agreement contained provisions with respect to wages, hours and conditions of employment. The agreement also contained a provision regarding arbitration of disputes that arose under the agreement. The defendant submitted a grievance to arbitration, claiming that the plaintiff violated certain contractual provisions relating to overtime pay in general and, specifically for Veteran's Day, 1994. On September 12, 1997, the arbitrator issued its award. The arbitrator determined that the commission had violated the provisions of the agreement with regard to overtime pay and awarded overtime pay for commission staff attorneys.[2]

Thereafter, the plaintiff filed an application in the trial court to vacate the arbitrator's award pursuant

[2] The arbitrator issued the following award: "The Agency violated the provisions of Article 18, Section 1 of the [agreement] via its method of compensating [commission] Staff Attorneys working overtime in general, and on November 14, 1994 (Veteran's Day) specifically.

"The [plaintiff] shall pay to each [commission] attorney the appropriate Article 18 overtime wage compensation for all hours of work beyond 35 hours per week, as were reasonably necessary to carry out the assigned responsibilities of that attorney; less any hours for which offsetting compensatory time off was allowed. This retroactive relief shall run back to thirty days prior to the date on which the present grievance was filed.

"Jurisdiction is retained to rule on any matters that the parties may not be able to themselves resolve regarding the specific back pay entitlement of any given [commission] attorney, pursuant to the remedy set forth in the preceding paragraph."

to General Statutes § 52-418.[3] The defendant filed an application in the trial court to confirm the award pursuant to General Statutes § 52-417.[4] The trial court denied the plaintiff's application to vacate the award and granted the defendant's application to confirm the award, and rendered judgment accordingly. This appeal followed.

I

The plaintiff first claims that the trial court improperly denied its application to vacate the arbitrator's

---

[3] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators. Notwithstanding the time within which the award is required to be rendered, if an award issued pursuant to a grievance taken under a collective bargaining agreement is vacated the court or judge shall direct a rehearing unless either party affirmatively pleads and the court or judge determines that there is no issue in dispute.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the Attorney General, in writing, of such filing within five days of the date of filing."

[4] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order

award pursuant to § 52-418 (a) (4) because the arbitrator improperly had interpreted the statutory exemption provided in the act. The plaintiff contends that the arbitrator exceeded his power because the award violated the act. Specifically, the plaintiff asserts that the arbitration award violated § 213 (a) (1) of title 29 of the United States Code[5] because it treated commission staff attorneys as hourly employees rather than as salaried employees. The defendant claims that the trial court properly granted the application to confirm the award because the award conformed to the submission. We agree with the defendant.

We begin by setting forth the appropriate standard of review of arbitration awards. "The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *Del-Greco*, 205 Conn. 178, 185, 530 A.2d 171 (1987). When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors

confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[5] Title 29 of the United States Code, § 213 (1994), provides in relevant part: "(a) . . . The provisions of section 206 (except subsection [d] in the case of paragraph [1] of this subsection) and section 207 of this title shall not apply with respect to—

"(1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities) . . . ."

of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration,* 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Garrity* v. *McCaskey,* 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . . *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184,* 237 Conn. 114, 119, 676 A.2d 825 (1996)." (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America,* 254 Conn. 35, 43–44, 757 A.2d 501 (2000).

"When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* [168 Conn. 54, 62, 357 A.2d 466 (1975)]. An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. *New Britain* v. *Connecticut State Board of Mediation & Arbitration,* 178 Conn. 557, 562, 424 A.2d 263 (1979); *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977). A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated

on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. *Meyers* v. *Lakeridge Development Co.*, 173 Conn. 133, 135, 376 A.2d 1105 [1977]." (Internal quotation marks omitted.) *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 584, 440 A.2d 774 (1981).

We interpret the plaintiff's argument as a claim that the arbitrator improperly interpreted the act's overtime exemption for professional employees. Although the plaintiff mentions that an award may be vacated for a manifest disregard of the law under *Garrity* v. *McCaskey*, supra, 223 Conn. 10, the plaintiff's brief does not assert that the arbitrator acted in manifest disregard of the law. We therefore understand the plaintiff's claim simply to be that the arbitrator improperly interpreted the applicable law. Resolution of this issue depends on the scope of the submission.

In the present case, the parties' submission to the arbitrator was voluntary pursuant to the collective bargaining agreement. At oral argument before this court, both parties conceded that the submission was unrestricted. "[J]udicial review of an award following an unrestricted submission is limited to whether the award conforms to the submission. *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106, 438 A.2d 1171 (1981)." *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 627, 509 A.2d 467 (1986). We, therefore, review the arbitrator's award only to the extent necessary to determine if it conforms to the submission. As the party challenging the award, the plaintiff "has the burden of producing evidence sufficient to show that it does not conform to the submission." *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333,

338–39, 555 A.2d 406 (1989). The plaintiff has failed to meet this burden.

The submission to the arbitrator contained the following stipulated issues: "Did the [commission] violate the provisions of Article 18, Section 1[6] and/or Article 27, Section 3[7] of the [agreement] via its method of com-

[6] Article 18, § 1, of the agreement provides in relevant part: "(a) The provisions of the Section shall be interpreted consistent with [General Statutes] Section 5-245 except when specifically provided otherwise.

"(b) The State will continue to pay overtime to eligible employees at the straight time rate for hours over thirty-five (35) but under forty (40), and at time-and-one-half for hours worked over forty (40), except as provided otherwise in Section 5-245 for employees on rotating shifts and unscheduled positions and classes and except for averaging schedule approved by the Commission of Administrative Services. Except as provided below, the payment of straight time for overtime hours worked over thirty-five (35) but under forty (40) shall not be used as a basis for extending the regular workweek beyond thirty-five (35) hours, provided, however, the State shall retain its right to require overtime under Regulations 5-245-1. Reference in this Article to changes in work schedules shall refer to the regular workweek up to but not beyond forty (40) hours with respect to those classes in which such regular work schedules have already been approved by the Commissioner of Administrative Services for some but not all of the employees in any such class. Whenever possible, volunteers will be solicited before employees are assigned. . . .

"Call Back Pay. Employees who have left work after the end of their scheduled work shift and who are called back to work shall receive a minimum of four (4) hours of overtime. This provision shall not apply to employees who are called in early prior to their regular starting time and work through their regular shift.

"(d) Overtime pay shall not be pyramided.

"(e) When practicable, overtime checks shall be paid no later than the second payroll period following the overtime worked."

[7] Article 27, § 3, of the agreement provides: "Overtime—Call-in on a Holiday. (a) Each full-time permanent employee whose job does not require him/her to work on a holiday shall ordinarily receive the holiday off and shall receive his/her regular week's pay for the week in which the holiday falls. When such employee is called in to work on a holiday, he/she shall receive overtime pay at the applicable rate but shall not receive a compensatory day off unless called in for less than four (4) hours, in which event the employee shall receive a compensatory day off in addition to such overtime pay.

"(b) Each full-time permanent employee whose job requires him/her to work on a holiday falling on a regular scheduled day off shall receive

pensating [commission] Staff Attorneys working over-
time in general, and on November 14, 1994 (Veteran's
Day) specifically? Further, did the [commission's]
actions constitute a violation of Article 1, Section 1;[8]
Article 2;[9] and/or Article 19, Sections 1[10] and 3?[11] In the
event of a violation, what shall be the remedy consistent
with the [agreement]?" The arbitrator first determined
that the commission had violated the provisions of arti-
cle 18, § 1, of the agreement in its compensation of

overtime pay at the applicable rate in addition to the compensatory day off
in lieu of such holiday."

[8] Article 1, § 1, of the agreement provides: "The State recognizes the Union
for the purpose of collective bargaining as the exclusive representative of
all the employees in the unit certified by the Connecticut State Board of
Labor Relations in Case No. SE-4723, Decision No. 1686D, issued January 10,
1979, including employees hired as Federal Grant participants and, subject to
the terms of Article 3, probationary, temporary, durational, provisional and
permanent part-time employees."

[9] Article 2 of the agreement provides: "This Agreement, upon legislative
approval and ratification, (where applicable), supersedes and cancels all
prior practices and agreements, whether written or oral, unless expressly
stated to the contrary herein, and constitutes the complete and entire
agreement between the parties and concludes collective bargaining for its
term. The parties acknowledge that during negotiations which resulted in
this Agreement, each had the unlimited right and opportunity to make
demands and proposals with respect to any subject or matter not removed
by law from the area of collective bargaining, and that the understandings
and agreements arrived at by the parties after exercise of that right and
opportunity are set forth in this Agreement. Therefore, the State and the
Union, for the duration of this Agreement, each voluntarily and unqualifiedly
waives the right, and each agrees that the other shall not be obligated to
bargain collectively with respect to any subject or matter whether or not
referred to or covered in this Agreement, even though such subjects or
matters may not have been within the knowledge or contemplation of either
or both of the [parties] at the time they negotiated or signed this Agreement."

[10] Article 19, § 1, of the agreement provides: "The parties herein agree
that absent a bona fide occupational qualification neither shall discriminate
against any employee on the basis of race, color, religious creed, sex, age,
national origin, ancestry, marital status, mental retardation, physical disabil-
ity, lawful political activity, prior conviction of a crime, a previous mental
disorder, or sexual preference."

[11] Article 19, § 3, of the agreement provides: "Each employee shall be
expected to render a full and fair day's work in an atmosphere of mutual
respect and dignity, free from abusive and/or arbitrary conduct."

commission staff attorneys. By way of remedy, the arbitrator then awarded commission staff attorneys compensation for all hours worked beyond thirty-five hours per week, minus any hours for which compensatory time was allowed, and mandated that the relief be retroactive for thirty days prior to the date on which the grievance was filed. We conclude that the award clearly conformed to the terms of the unrestricted submission. We therefore do not review the award for the error of law claimed by the plaintiff. See *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 342, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985).

II

The plaintiff next claims that the trial court improperly confirmed the award of the arbitrator because the award violates a clear public policy. Specifically, the plaintiff claims that the arbitration award violates the clear public policy of prohibiting professional employees from receiving overtime compensation that is contained in the act and General Statutes § 5-245 (b).[12] The defendant, however, asserts that: (1) the plaintiff has failed to meet its burden of identifying a public policy contained in the act or § 5-245; and (2) even if the act and § 5-245 contain such a clear public policy, the plaintiff has not met its burden of demonstrating a clear violation of that policy. We agree with the defendant.

We begin by setting forth the law that guides our analysis of the plaintiff's public policy claim. "In spite

[12] General Statutes § 5-245 (b) provides: "The provisions of this section shall not be applied with respect to any employee employed in (1) an executive, administrative or professional capacity as such terms may be defined and delimited from time to time by the Commissioner of Administrative Services or (2) a position or class which has been designated as unscheduled by the Commissioner of Administrative Services, or (3) a position the regular work schedule of which requires rotating shifts as approved by the Commissioner of Administrative Services and recorded in his office, which schedule shall not average more than five work days per week over a period of not more than eight weeks."

of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a) (4) when the award rendered is claimed to be in contravention of public policy." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 474, 747 A.2d 480 (2000). "[W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000). [The plaintiff's] challenge raises such a claim. We therefore undertake de novo review of the award." *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 45.

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general consid-

erations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Citations omitted; internal quotation marks omitted.) Id., 45–46.

The plaintiff asserts that the federal act and the related state statute, § 5-245, embody a clear public policy prohibiting professional employees from receiving overtime. In response, the defendant argues that: (1) there is no such clear public policy prohibiting professional employees from receiving overtime; and (2) the act and § 5-245 establish minimum levels of employment benefits but allow for employees to contract for greater benefits. We agree with the defendant.

The plaintiff's claim of a public policy of prohibiting overtime compensation for professional employees rests on the definition of "salaried employee" that is contained in § 541.118 of title 29 of the Code of Federal Regulations.[13] That section provides for the implemen-

---

[13] Section 541.118 of title 29 of the Code of Federal Regulations (2000), provides in relevant part: "(a) An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any work-week in which he performs no work.

"(1) An employee will not be considered to be 'on a salary basis' if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

"(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than

tation of the act's overtime wage exemptions, which are contained in title 29 of the United States Code, § 213. Title 29 of the United States Code, § 213, exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from the provisions that guarantee overtime compensation. The Code of Federal Regulations provides: "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. . . ." 29 C.F.R. § 541.118 (a) (2000). The definition of salaried employee includes provisions that "[a]n employee will not be considered to be 'on a salary basis' if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business"; 29 C.F.R. § 541.118 (a) (1) (2000); and that "[d]eductions may be made . . . when the employee absents himself from work for a day or more . . . ." 29 C.F.R. § 541.118 (a) (2) (2000).

The plaintiff claims that the definition of "salaried employee" containing references to "a day or more" and "a day or longer"; 29 C.F.R. § 541.118 (a) (2) (2000); indicates that status as a salaried employee is assumed and can be negated only by deductions in pay for absences of at least one day. It cites this narrow definition of salaried employee as evidence of the act's public

---

sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences. . . ."

policy prohibiting professional employees from receiving overtime compensation.

As the party challenging the award, the plaintiff "bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 46. The plaintiff, however, points to no specific language in the regulations to support the very narrow definition of salaried employee that it urges. The plaintiff quotes selected portions of the regulations that refer to absences of "a day or more"; 29 C.F.R. § 541.118 (a) (2) (2000); without clearly demonstrating that the regulations require salaried employee status to be based on deductions in pay made for absences of less than one day. The act and the minimum wage laws are remedial statutes, which are to be liberally construed. *Antenor* v. *D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996); *West* v. *Egan*, 142 Conn. 437, 442, 115 A.2d 322 (1955). In addition, overtime exemptions are construed narrowly. *Shell Oil Co.* v. *Ricciuti*, 147 Conn. 277, 283, 160 A.2d 257 (1960). We conclude, therefore, that the mere references in the Code of Federal Regulations to absences of "a day or more" and "a day or longer"; 29 C.F.R. § 541.118 (a) (2) (2000); do not establish that the definition of salaried employee is so narrow as to demonstrate that the act incorporates a well defined or dominant public policy in favor of prohibiting professional employees from receiving overtime compensation. Moreover, even if we were to agree with the plaintiff that the regulations dictate that salaried employee status is negated only by deductions for absences of less than one day, we are unable to conclude that this definition alone demonstrates a well defined public policy in favor of prohibiting professional employees from receiving overtime compensation. We conclude, therefore, that the plaintiff has not met its burden of clearly demonstrating that

the award conflicts with a dominant public policy of the act.

Although the plaintiff focuses primarily on the federal regulations, an examination of the language of the federal overtime exemption statute itself; 29 U.S.C. § 213 (1994); also supports our conclusion that the act does not contain a clear public policy of prohibiting overtime compensation for professional employees. That statute provides in relevant part: "The provisions of section 206 (except subsection [d] in the case of paragraph [1] of this subsection) and section 207 of this title shall not apply with respect to—(1) any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213 (a) (1) (1994). Moreover, title 29 of the United States Code, § 207 (a) (1) (1994), requires employers to pay employees "at a rate not less than one and one-half times the regular rate" of pay for any time spent working in excess of forty hours per week. Section 207 establishes, therefore, minimum levels of overtime benefits to which employees are entitled. Section 213 merely exempts professional employees from the overtime compensation *mandated* by § 207. The explicit statutory language of §§ 207 and 213 does not demonstrate a strong public policy prohibiting overtime compensation for professional employees, but merely exempts professional employees from *mandated* overtime compensation.

The plaintiff also claims that the award violates the public policy underlying General Statutes § 5-245 (b), which provides in part that the provisions guaranteeing overtime compensation for state employees "shall not be applied with respect to any employee employed in (1) an executive, administrative or professional capacity as such terms may be defined and delimited from time to time by the Commissioner of Administrative Services . . . ." The commissioner of administrative services has not defined or delimited these terms. See Regs., Conn.

State Agencies § 5-245-1. In support of its argument that § 5-245 demonstrates a well defined public policy in favor of prohibiting overtime compensation for professional employees, the plaintiff asserts only that the previously quoted portion of § 5-245 is a reference to the federal statutory overtime exemption contained in the act. We interpret the plaintiff's claim, therefore, as asserting that the public policy prohibiting professional employees from overtime compensation is demonstrated in § 5-245 only insofar as § 5-245 incorporates the public policy of the act's overtime exemption. We concluded previously in part II of this opinion that the plaintiff had failed to meet its burden of demonstrating that the act incorporated a well defined or dominant public policy of prohibiting overtime compensation for professional employees. Because the plaintiff points to no other authority establishing a well defined public policy behind § 5-245, we conclude that the plaintiff has failed to meet its burden of demonstrating that the award clearly violated the public policy of § 5-245.

To the extent that the plaintiff claims that the award violated public policy because the arbitrator misapplied the definition of salaried employee, we decline to undertake judicial review of the arbitrator's factual determinations in interpreting the terms of the contract. The arbitrator made a factual determination that commission staff attorneys are hourly, rather than salaried employees. "[I]n undertaking de novo review of the plaintiff's public policy claim, we defer to the arbitrator's interpretation of the agreements . . . . We therefore do not substitute our own reading of the contract terms for that of the arbitrator, but intervene only to the extent that those terms, as interpreted, violate a clearly established public policy." (Internal quotation marks omitted.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 432 n.8. The plaintiff has failed to meet its burden of clearly

demonstrating that the award violated a well defined or dominant public policy. We therefore will not substitute our own reading of the contract terms for that of the arbitrator.

In urging that the act and § 5-245 establish a public policy prohibiting professional employees from overtime compensation, the plaintiff misconstrues these statutes. "The principal congressional purpose in enacting the [act] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.' 29 U.S.C. § 202 (a)." *Barrentine* v. *Arkansas-Best Freight System*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). As a result, "[t]he [act] sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours . . . . Parties may, of course, contract for additional rights above those guaranteed by the statute." *Rogers* v. *Troy*, 148 F.3d 52, 57 (2d Cir. 1998). The act is violated when employees are paid less than the amount set forth therein. Employers, however, do not violate the act when they provide employees with greater employment benefits than those required under the act. In this case, the arbitration award does not grant commission staff attorneys employment benefits that are below those required by the act. To the contrary, the arbitrator determined that commission staff attorneys are *contractually* entitled to overtime compensation benefits that exceed the minimum benefits required by the act. Therefore, even if commission staff attorneys are not guaranteed overtime compensation under the act and § 5-245, the award does not violate these acts.

The plaintiff also claims that the arbitrator's award violated the public policy prohibiting overtime compen-

sation for professional employees because the legislature did not grant approval for paying overtime compensation to commission staff attorneys pursuant to General Statutes § 5-278 (b).[14] Section 5-278 (b) provides in part that collective bargaining agreements "together with a request for funds necessary to fully implement such agreement and for *approval of any provisions of the agreement which are in conflict with*

[14] General Statutes § 5-278 (b) provides: "Any agreement reached by the negotiators shall be reduced to writing. The agreement, together with a request for funds necessary to fully implement such agreement and for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency, and any arbitration award, issued in accordance with section 5-276a, together with a statement setting forth the amount of funds necessary to implement such award, shall be filed by the bargaining representative of the employer with the clerks of the House of Representatives and the Senate within ten days after the date on which such agreement is reached or such award is distributed. The General Assembly may approve any such agreement as a whole by a majority vote of each house or may reject such agreement as a whole by a majority vote of either house. The General Assembly may reject any such award as a whole by a two-thirds vote of either house if it determines that there are insufficient funds for full implementation of the award. If rejected, the matter shall be returned to the parties for further bargaining. Once approved by the General Assembly, any provision of an agreement or award need not be resubmitted by the parties to such agreement or award as part of a future contract approval process unless changes in the language of such provision are negotiated by such parties. Any supplemental understanding reached between such parties containing provisions which would supersede any provision of the general statutes or any regulation of any state agency or would require additional state funding shall be submitted to the General Assembly for approval in the same manner as agreements and awards. If the General Assembly is in session, it shall vote to approve or reject such agreement or award within thirty days after the date of filing. If the General Assembly is not in session when such agreement or award is filed, it shall be submitted to the General Assembly within ten days of the first day of the next regular session or special session called for such purpose. The agreement or award shall be deemed approved if the General Assembly fails to vote to approve or reject such agreement or award within thirty days after such filing or submission. The thirty-day period shall not begin or expire unless the General Assembly is in regular session. For the purpose of this subsection, any agreement or award filed with the clerks within thirty days before the commencement of a regular session of the General Assembly shall be deemed to be filed on the first day of such session."

*any statute or any regulation of any state agency,* and any arbitration award" shall be submitted to the legislature for approval. (Emphasis added.) As the plaintiff has not met its burden of demonstrating that the overtime compensation of commission staff attorneys violates any statute, we are unable to conclude that it was necessary to submit the overtime compensation provision of the collective bargaining agreement to the legislature for approval.

The judgment is affirmed.

In this opinion the other justices concurred.