[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court of the motion of the state of Connecticut (State) to vacate an arbitration award. The state argues that the award violates General Statute § 5-245 (b) and, thus, is in violation of public policy the award does not draw its essence from the contract and the issue submitted to arbitration, namely overtime CT Page 5204 compensation, is nonarbitrable.
The court rules that the award should not be vacated because it does not violate a statute or a clear public policy, and that the award does draw its essence from the contract except as to the length of retroactive pay that was awarded. Finally, the court rules that the plaintiff has waived its right to raise the issue of nonarbitrability on its motion to vacate. Thus, the motion to vacate is denied except as to the length of retroactive pay.
On September 9, 1999, the applicant, the State of Connecticut, filed an application to vacate an arbitration award rendered in favor of the respondent, the Connecticut State Employees Association (Association). The parties are governed by a collective bargaining agreement containing provisions with respect to wages, hours and conditions of employment. Article 17 of the collective bargaining agreement governs overtime. Article 17, § 3, provides that certain employees, termed "exempt employees," are not entitled to overtime pay when they work beyond their standard work week but are instead entitled to receive compensatory time off. In certain situations, however, where the granting of compensatory time off would create a hardship, overtime payment at straight time may be granted with the approval of the secretary of the office of policy and management. Further, Article 17, § 5, provides that the secretary of the office of policy and management may authorize the lifting of the overtime cap when it is determined that the use of existing personnel, through the payment of overtime rather than through contracting out, would better accomplish a project.
On March 17, 1998, Arthur Rocque, the Commissioner of the Department of Environmental Protection (DEP), and Henry Peck, the Agency Personnel Administrator, in a memorandum to the Secretary of the Office of Policy and Management, requested that the overtime cap be lifted for certain employees, including exempt employees, of the Bureau of Water Management, Inland Water Resources Division (IWRD). The DEP stated in the request that compensatory time would not result in the achievement of the DEP's objective in reducing a permit backlog. The request indicated that a maximum of 5.0 hours of straight time and 2.5 hours of time and one half was needed. This request was approved by Pamela Law, the Executive Budget Officer of the Office of Policy and Management.
Subsequently, the employees worked the overtime hours, but all overtime was paid at straight time. No portion of the overtime was paid at time and one half. The employees were advised that the DEP and the office of policy and management agreed that the letter requesting a lifting of the overtime cap, which referred to payment at time and one half, was in error and not in accordance with the collective bargaining agreement. CT Page 5205
In June of 1998, the Association filed a grievance. The grievance was denied on the ground that Article 17, § 3, of the collective bargaining agreement provided that payment at straight time in lieu of compensatory time may be granted with the approval of the Secretary of the Office of Policy and Management, but that there was no provision for payment at time and one half.
Pursuant to the collective bargaining agreement, the parties entered into arbitration. The submission presented to the arbitrator was: "Did the State violate Article 17 of the collective bargaining agreement when it failed to pay overtime at time and one half to exempt employees of the Department of Environmental Protection from March 27, 1998 to December 31, 1998? If so, what shall be the remedy?" A hearing was held on April 13, 1999. At this hearing, the Association argued that the payments at time and one half were consistent with, and covered by, Article 17, § 5, which permits the lifting of the cap on overtime. The State argued that the employees were precluded by statute and contract from being paid overtime at time and one half. Further, the State argued that Article 17, § 3, designates that employees may only be paid at straight time and asserted that § 5 did not apply in this case because it permits the lifting of the overtime cap in circumstances where the contracting out of work is an issue and, in this case, there was no evidence that the IWRD ever contemplated contracting out the work involved.
The arbitrator, in his opinion and award, found that the State did violate Article 17 of the collective bargaining agreement and awarded the employees overtime at time and one half from N4arch 27, 1998 to December 31, 1998. The arbitrator stated that § 5, rather than § 3, applied in this case since IWRD requested and obtained approval from the Office of Policy and Management authorizing the "lifting of the overtime cap" as provided by § 5. Also, the arbitrator was unpersuaded by the State's argument that § 5 did not apply because the IWRD had not contemplated contracting work out. He interpreted § 5 as providing a means by which the IWRD could lift the cap and pay its otherwise exempt employees at the rate of time and one half for overtime work. On the basis of his interpretation, the arbitrator awarded the employees overtime at time and one half from March 27, 1998 to December 31, 1998.
The State moves to vacate the arbitrator's award on the grounds that: (1) the arbitrator exceeded his powers under General Statutes § 52-418
(a) (4)[1] because the award violates General Statutes § 5-245
(b),[2] which prohibits overtime payment to exempt employees; (2) the award violates public policy; (3) the award does not draw its essence from the contract which incorporates § 5-245; (4) the award should be CT Page 5206 vacated for nonarbitrability because § 5-245 (b) applies rather than the collective bargaining agreement; and (5) the award does not draw its essence from the contract because it awards overtime pay retroactive for more than thirty days prior to the submission of the grievance. The Association filed a memorandum of law in opposition.
 A Standard of Review
"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of [the court's] judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because [the court favors] arbitration as a means of settling private disputes, [it will] undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrator's acts and proceedings." (Internal quotation marks omitted.)State v. AFSCME, AFL-CIO, Council 4, Local 2663, 257 Conn. 80, 84-85,777 A.2d 169 (2001).
"When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. . . . An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, [the court] need only examine the submission and the award to determine whether the award conforms to the submission. . . . A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Citations omitted; internal quotation marks omitted.) Id., 85-86.
This deferential standard of review is, however, subject to certain exceptions. Schoonmaker v. Cummings Lockwood of Connecticut, P.C.,252 Conn. 416, 427, 747 A.2d 1017 (2000). Courts will so defer unless CT Page 5207 "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of General Statutes § 52-418
(a). . . . (Citations omitted; internal quotation marks omitted.) Id., 428. "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Internal quotation marks omitted.) State v. AFSCME, AFL-CIO, Council 4, Local 2663, supra,257 Conn. 90-91. "[W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review." (Internal quotation marks omitted.) Id., 90.
 Exceeded Powers/Public Policy
The State's first two arguments, that the arbitrator exceeded his powers and that the award violates public policy, will be addressed together. Both of these arguments are based on the State's contention that the award of overtime pay to exempt employees violates the provisions of § 5-245 (b). The State argues that Article 17, § 5, of the collective bargaining agreement conflicts with § 5-245 (b) because the statute prohibits exempt employees from receiving overtime payment. Further, the State asserts, that because the DEP did not obtain supersedence approval of § 5, that section does not supersede §5-245, which the State contends precludes overtime payment to the exempt employees. The State thus concludes that because the arbitrator's award CT Page 5208 conflicts with the statute, the arbitrator exceeded his powers and the award is in violation of public policy.
Supersedence approval refers to "the request . . . for approval of any provisions of the [collective bargaining] agreement which are in conflict with any statute or any regulation of any state agency which must be submitted to the legislature at the time a collective bargaining agreement is to be voted upon." (Internal quotation marks omitted.) StateCollege American Assn. of University Professors v. State Board of LaborRelations, 197 Conn. 91, 96 n. 5, 495 A.2d 1069 (1985); see also General Statutes § 5-278 (b) (requiring legislature be apprised of collective bargaining provisions in conflict with any statute before approving such agreement). "[A] term at variance with law, not approved by the legislature in accordance with General Statutes § 5-278 (b), does not enjoy the preferential position provided for legislatively approved conflicting terms by § 5-278 (e), but is rendered a nullity. Neither party to the agreement is therefore entitled to enforce that term." Boardof Trustees v. Federation of Technical College Teachers, 179 Conn. 184,197, 425 A.2d 1247 (1979).
The DEP did not obtain supersedence approval for Article 17, § 5, of the collective bargaining agreement. Article 17, § 5, was not listed in the supersedence appendix to the contract that was submitted to the legislature for approval. (Application, Exhibit A.) Contrary to the Association's argument, the supersedence appendix does not refer generally to Article 17 as a whole but very specifically refers only to §§ 3 and 6 as being in conflict with § 5-245, making no reference to § 5. This listing of two specific sections of Article 17 indicates the absence of notification to the legislature of a conflict between § 5 and § 5-245. Thus, there was no supersedence approval of § 5.
However, no supersedence approval for § 5 was necessary because, contrary to the State's assertion, § 5 does not conflict with §5-245. That statute requires the payment of overtime wages for hours beyond an employer's regular work week unless the employee is an executive, administrative or professional employee. The statute is directory not preclusive. The Supreme Court has held that payment of overtime to exempt employees does not violate § 5-245 (b). State v.AFSCME, AFL-CIO, Council 4, Local 2663, supra, 257 Conn. 96. The court stated that "[t]he [statute] sets a . . . floor in terms of working conditions, in order to protect workers from . . . substandard wages and excessive hours. . . . Parties may, of course, contract for additional rights above those guaranteed by the statute. . . . The [statute] is violated when employees are paid less than the amount set forth therein. Employers, however, do not violate the [statute] when they provide CT Page 5209 employees with greater employment benefits than those required under the [statute]." (Citation omitted; internal quotation marks omitted.) Id. Article 17, § 5, provides greater benefits for exempt employees than required under § 5-245 in that it allows the DEP to obtain approval to lift the overtime cap for exempt employees. Thus, even though exempt employees are not entitled to overtime compensation under § 5-245, the statute does not prohibit them from receiving it. See State v.AFSCME, AFL-CIO, Council 4, Local 2663, supra, 257 Conn. 96. Accordingly, in the absence of demonstrating that overtime compensation of exempt employees violates any statute, it cannot be said that it was necessary to submit the overtime compensation provisions of § 5 to the legislature for supersedence approval. Id., 98.
The arbitrator did not exceed his powers under § 52-418 (a) (4) because his award of overtime compensation to exempt employees does not violate § 5-245 (b). The State has not met its burden of demonstrating that there is a well defined or dominant public policy of prohibiting overtime compensation for professional employees because its argument was erroneously based on its assertion that the payment of overtime violated state law in the absence of supersedence approval. See id., 95. The plaintiff fails to point to any authority establishing that this is the clear public policy behind § 5-245 is to preclude the payment of overtime wages to employees who work overtime. See Id. To the contrary, as stated previously, the Supreme Court has held that the clear public policy of § 5-245 is "to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." (Internal quotation marks omitted.) Id., 96. Requiring workers to work overtime without compensation constitutes an exploitive condition detrimental to the maintenance of the minimum standards of living necessary for the health efficiency and well being of workers violative of the Public policy of objective § 5-245. That is especially so in this case where the right to receive overtime was bargained for and the State seeks to deny it because of its own failure to seek supersedence approval. Therefore, the State has not met its burden of showing that the arbitrator's award violates public policy.
 Essence of the Contract
The State's next argument is that the arbitrator exceeded his powers under § 52-418 (a) (4) because the award does not draw its essence from the collective bargaining agreement. This argument is based on the State's position, addressed and rejected in the previous section of this decision, that § 5-245 (b) prohibits overtime compensation to exempt employees. Specifically, the State asserts that the provisions of § CT Page 52105-245 (b) were incorporated into the collective bargaining agreement, and, thus, overtime payment to professional employees is inherently inconsistent with the collective bargaining agreement.
"[W]here a party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement . . . [the] court will review the award only to determine whether it draws its essence from the collective bargaining agreement." (Citation omitted; internal quotation marks omitted.) American Fabrics Co. v. United TextileWorkers of America, 12 Conn. App. 642, 646, 533 A.2d 579 (1987). As discussed in the previous section, overtime payment to professional employees is not inconsistent with the provisions of § 5-245 (b). Further, a comparison of the collective bargaining agreement and the award shows that the arbitrator based his decision on Article 17, § 5, of the collective bargaining agreement. Thus, the court finds that the arbitration award draws its essence from the collective bargaining agreement.
 Arbitrability
The State next argues that the overtime claim is controlled by §5-245 and public policy outside of any specific provision in the collective bargaining agreement, rendering it nonarbitrable under the plain terms of the arbitration clause. Again, the State's argument is based on its contention that, in the absence of supersedence approval, § 5-245 controls and renders the alleged conflicting provision of Article 17, § 5, a nullity.
As an initial matter, as discussed previously, § 5 does not conflict with § 5-245 and is, therefore, not a nullity. Thus, since the dispute arose out of the provisions of the collective bargaining agreement, namely, Article 17, the State's argument that the issue of overtime compensation is nonarbitrable is without merit.
Moreover, even if the State were correct, the Association avers that claims of arbitrability must be raised at arbitration. The Supreme Court has "held that there are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration." CT Page 5211 (Citations omitted; internal quotation marks omitted.) White v. Kampner,229 Conn. 465, 476, 641 A.2d 1381 (1994). What is, however, clear is that "[p]arties [may not] forego objections to arbitration, gambling upon a favorable result and, when losing . . . raise the procedural defects in a motion to vacate. . . . [The Supreme Court has] held that a party who voluntarily submits a dispute to arbitration without objecting to the arbitrability of the dispute waives judicial review of that issue." (Citation omitted; internal quotation marks omitted.) Id., 476-77; see also Conte v. Norwalk, 173 Conn. 77, 79, 376 A.2d 412 (1977). The state did not submit the issue of arbitrability to the arbitrator and, therefore, it has waived its right to judicial review of this issue.
The State contends nevertheless that Article 14, § 9(c), of the collective bargaining agreement allows for judicial review of arbitrability regardless of whether the arbitrability issue was submitted to the arbitrator in the first instance. Even if the collective bargaining agreement did not provide for judicial review of arbitrability, absent submission to the arbitrator, the State asserts that such review may be conducted pursuant to § 52-418 because the award conflicts with a state statute.
The State's argument that Article 14, § 9(c), allows the court to review claims of arbitrability without first submitting the issue to the arbitrator is unavailing. This provision provides in relevant part: "The arbitrator's decision shall be final and binding on the parties in accordance with Connecticut General Statutes, Section 52-418, provided, however, neither the submission of questions or arbitrability to any arbitrator in the first instance nor any voluntary submission shall be deemed to diminish scope of judicial review over arbitration awards including awards on competent jurisdiction, to construe any such award as contravening the public interest." In other words issues of arbitrability do not diminish the scope of judicial review of awards which contravene public policy. This provision allows judicial review of the arbitrator's award, regardless of issues of arbitrability, if the award is in contravention of the public policy. It does not mean that a party may raise the issue of arbitrability on a motion to vacate without first submitting the issue to the arbitrator. Moreover, as stated earlier, the award does not violate public policy.
 Retroactive Pay
The State's final argument is that the award of overtime pay retroactive for more than thirty calendar days prior to the Association's grievance submission is inherently inconsistent with the collective bargaining agreement. Specifically, the State contends that this award is in violation of Article 14, § 9(c), which provides in relevant CT Page 5212 part: "The arbitrator shall have no power to . . . grant pay retroactivity [sic] for more than thirty (30) calendar days prior to the date a grievance was submitted. . . ." The State asserts that since the grievance was filed on June 10, 1998, an award of back overtime pay could extend no further than thirty days prior to June 10, 1998, or to May 11, 1998. The Association argues, in opposition, that the parties submitted an unrestricted submission and that the scope of judicial review is limited to the determination of whether the award conforms to the submission. Thus, the Association contends that the award conforms to the submission and the award of retroactive pay from March of 1998 through December of 1998 was proper.
As stated earlier in this decision, "where a party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement . . . [the] court will review the award only to determine whether it draws its essence from the collective bargaining agreement." (Citation omitted; internal quotation marks omitted.) American Fabrics Co. v. United Textile Workers of America,
supra, 12 Conn. App. 646. The award of retroactive pay from March of 1998 through December of 1998 does not draw its essence from the agreement because the collective bargaining agreement clearly states that the arbitrator has no power to grant retroactive pay for more than thirty calendar days prior to the date a grievance is submitted. The Association filed the grievance on June 10, 1998, and, according to the terms of the collective bargaining agreement, the retroactive pay may only be awarded back to May 11, 1998. To the extent the arbitrator awarded retroactive pay for more than thirty calendar days prior to June 10, 1998, he exceeded his powers, and the State's motion to vacate should be granted in part.
The State has failed to meet its burden of demonstrating that the overtime compensation at time and one half violates any statute or a clear and dominant public policy. The award of retroactive pay from March 27, 1998, through December 31, 1998, does not, however, draw its essence from the contract. Accordingly, the motion to vacate is denied except as to the award of retroactive pay which is hereby vacated in part. The award of retroactive pay from March 27, 1998 through May 10, 1998 is vacated. The award of retroactive pay from May 11, 1998, through December 31, 1998 is confirmed.
Bryant, J.