STATE OF CONNECTICUT *v.* AFSCME,
COUNCIL 4, LOCAL 387, AFL-CIO
(SC 16121)

Borden, Norcott, Katz, Peters and Callahan, Js.

Argued November 4, 1999—officially released March 15, 2000*

*J. William Gagne, Jr.*, with whom, on the brief, was *Jason W. Cohen*, for the appellant (defendant).

---

* March 15, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendant union, AFSCME, Council 4, Local 387, AFL-CIO, appeals from the judgment of the trial court for the plaintiff, the state of Connecticut, granting its application to vacate an arbitration award pursuant to General Statutes § 52-418,[1] and denying the defendant's cross application to confirm the arbitration award pursuant to General Statutes § 52-417.[2] On appeal, the defendant claims that the court improperly vacated the arbitration award on the basis that the arbitrator's award violated public policy. We disagree with the defendant, and we affirm the judgment of the trial court.

The relevant facts are not in dispute. Gregory Frederick, a correctional officer employed by the state department of correction and assigned to the John Manson

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[2] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

Youth Correctional Center, had attended a union rally at the state capitol in early May, 1997. This rally was called by the defendant in response to the Senate's recent rejection of an interest arbitration award that affected the labor contract covering correctional officers. At the rally, the defendant asked its rank and file members to contact Senate members to protest the rejection of the contract and distributed telephone lists for that purpose. While on duty at the Manson Youth Correctional Center on May 15, 1997, Frederick called approximately six legislators, including Senator Alvin W. Penn from Bridgeport. Frederick used a state owned telephone for this purpose. The telephone call to Senator Penn is the subject of this appeal.

Without identifying himself, Frederick left a profane and racist message[3] on the Senator's voice mail.[4] Senator Penn reported the call to legislative security and an investigation ensued. Frederick initially denied making the call. The next day, however, he admitted to the investigator that he had made the telephone call. As a result of this action, Frederick's employment with the correction department was terminated, effective June 18, 1997. Frederick also was arrested for harassment in the second degree in violation of General Statutes § 53a-183 (a).[5] He applied for accelerated rehabilitation, which was granted by the court. The court imposed a

---

[3] The telephone message left by Frederick stated in part: "Yeah, hey uh Mr. Penn, this is one of the correction officers that you referred to as a . . . as a . . . as a criminal. Who the fuck are you to call a criminal you fucking cock-sucking crack-fucking nigger."

[4] In the arbitration award, it was alleged that Frederick had been informed that Senator Penn once had referred to correction officers in general as "criminals."

[5] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language, or . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

two year period of probation and ordered Frederick to perform 300 hours of community service. General Statutes § 54-56e.[6]

Frederick filed a grievance concerning his dismissal through the defendant claiming that he was discharged without cause and that the discipline was too severe. The grievance was denied at the initial stages, and the defendant subsequently filed for arbitration pursuant to the applicable collective bargaining agreement. The parties joined in framing the following issue to be submitted to the arbitrator, Thomas Staley: "Was the dismissal of the grievant, Gregory Frederick, for just cause? If not, what shall be the remedy consistent with the contract?" As documented by the certificate of record before the arbitrator, certified by the office of labor relations and filed with the clerk of the Superior Court on May 8, 1998, the arbitrator reviewed Department of Correction Administrative Directives, Unit Directives and General Post Orders, which were relevant to Frederick's alleged misconduct.[7]

---

[6] General Statutes § 54-56e provides in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime . . . for which ·a sentence to a term of imprisonment may be imposed . . . .

"(b) The court may, in its discretion, invoke such program on motion of the defendant . . . .

"(d) Any defendant who enters such program . . . shall, under such conditions as the court shall order, be released to the custody of the Office of Adult Probation . . . .

"(e) If a defendant released to the custody of the Office of Adult Probation satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges. . . ."

[7] The Department of Correction Administrative Directive 2.17, Employee Conduct, provides in relevant part:

"Section 5. Standards of Conduct

"A. Each Department employee shall:

"1. Comply with all federal and state laws, regulations and/or statutes, Department and Unit Directives and lawful instructions/orders. . . .

"6. Comply with official notices and roll call and other instructions. . . .

"12. Act in a professional manner showing respect to other employees, the public. . . .

The arbitrator issued the following award: "The termination of [Frederick] effective June 18, 1997, is vacated and same is reduced to a suspension of sixty (60) working days without pay. The [plaintiff] is ordered to reinstate [Frederick] forthwith with all benefits and pay lost by [Frederick] from June 18, 1997, to the date of his reinstatement less the pay covering the sixty (60) working days suspension. Further, the back pay award is to be further decreased by any form of compensation received by [Frederick] during the time of June 18, 1997, to the date of his reinstatement except for the first sixty (60) working days commencing with what would have been [Frederick's] first working day after June 18, 1997. The back pay award should be paid at the rate [Frederick] would have earned during the applicable time period. The [plaintiff] shall place a copy of this arbitration award in [Frederick's] personnel file. Employment record should include a copy of this award."

The plaintiff applied to the trial court to vacate the arbitration award, pursuant to both § 52-418 and the

"15. Maintain appropriate demeanor at all times.

"16. Be courteous and accommodating in all dealings with the public, to include telephone etiquette. . . .

"18. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and any other law enforcement or regulatory agency.

"B. The following behavior shall be strictly prohibited:

"1. Any act that jeopardizes the security of the unit, health, safety or welfare of the public, staff or inmates. . . .

"10. Engage in abusive or obscene language, threats, and/or intimidating behavior.

"11. Engage in professional or illegal behavior, both on and off duty, that could in any manner reflect negatively on the Department of Correction."

The Department of Correction Manson Youth Institution, Unit Directive 6.2.1-1, General Post Orders, provides in relevant part:

"19. Institution telephones are for official use only, and conversations must be brief. All personal outside calls must be approved by a supervisor. . . .

"45. Good community relations is essential to a professional organization. As such, a polite, courteous, cooperative attitude must be reflected at all times, on or off duty."

common law. The plaintiff claimed that the arbitrator, by ordering Frederick's reinstatement on the ground that he had not been dismissed for just cause, "exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made as hereinafter set forth: (A) The award does not draw its essence from the contract. (B) The arbitrator exceeded his powers in violation of . . . § 52-418 and the common law. (C) This award violates explicit, well defined and dominant public policy referenced in both the statutory and common law of this state. (D) Enforcement of this award would violate explicit, well defined and dominant public policy referenced in both the statutory and common law of this state." The defendant cross applied to confirm the award.

The trial court granted the plaintiff's application to vacate the arbitrator's award and denied the defendant's cross application to confirm the award. The court concluded that "the arbitrator's award violates an explicit, well-defined and dominant policy of the state warranting the termination of employees who engage in behavior such as [Frederick's], which is wholly incompatible with continued employment by the [plaintiff]. Anything less than termination is not sufficient to uphold this important policy."

The defendant appealed from the judgment of the trial court to the Appellate Court. Thereafter, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c)[8] and Practice Book § 65-1.[9]

---

[8] General Statutes § 51-199 (c) provides in relevant part: "The Supreme Court may transfer to itself a cause in the Appellate Court. . . ."

[9] Practice Book § 65-1 provides in relevant part: "When, pursuant to General Statutes § 51-199 (c), the supreme court . . . transfers to itself a cause in the appellate court . . . the appellate clerk shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred. There shall be no fee on such transfer. The appellate clerk may require the parties to take such steps as may be necessary to make

The defendant claims that the trial court improperly concluded that § 53a-183 (a) establishes a public policy sufficient to justify vacating the arbitration award and that the trial court wrongfully vacated the award as violative of such public policy. In doing so, the defendant claims that the trial court improperly based its decision to vacate the arbitration award on considerations of supposed public interest, not on policy grounded in statutory law and legal precedent. We conclude that the trial court's decision was properly grounded in statutory law and legal precedent, and that the trial court correctly concluded that the arbitration award was violative of public policy clearly expressed in statutes and relevant administrative regulations that were properly before the arbitrator and, subsequently, the trial court. We therefore affirm the judgment of the trial court.

We begin our analysis with a restatement of familiar principles reflecting this court's traditional deference to arbitral awards. " 'We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes.' *Board of Education* v. *AFSCME*, 195 Conn. 266, 270, 487 A.2d 553 (1985); *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 290, 377 A.2d 323 (1977); *International Union* v. *Fafnir Bearing Co.*, 151 Conn. 650, 653, 201 A.2d 656 (1964); *Board of Education* v. *Local 818*, 5 Conn. App. 636, 639, 502 A.2d 426 (1985). 'A challenge of the arbitrator's authority is limited to a comparison of the award to the submission.' *Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 584, 440 A.2d 774 (1981); see also *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 186, 530 A.2d 171 (1987); *Board of Education*

the appeal conform to the rules of the court to which it has been transferred, for example, supply the court with additional copies of the record and briefs."

v. *AFSCME*, supra, 271; *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Bruno* v. *Department of Consumer Protection*, 190 Conn. 14, 18, 458 A.2d 685 (1983); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106, 438 A.2d 1171 (1981); *Board of Education* v. *Local 818*, supra, [639]." *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 338, 555 A.2d 406 (1989).

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 115, 728 A.2d 1063 (1999).

"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a) (4) when the award rendered is claimed to be in contravention of public policy. *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 416–17, 544 A.2d 186 (1988); *Stratford* v. *Local 134, IFPTE*, 201 Conn. 577, 590–91, 519 A.2d 1 (1986); *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 195, 425 A.2d 1247 (1979); *Stamford* v. *Stamford Police Assn.*, 14 Conn. App. 257, 259, 540 A.2d 400 (1988); *State* v. *Connecticut Council 4, CEU, AFSCME*, 7 Conn. App. 286, 290, 508 A.2d 806 (1986) . . . . This challenge is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is

not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the board's award clearly violates an established public policy mandate." (Citations omitted; internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, supra, 210 Conn. 339–40.

This court recently has held, in an issue of first impression, that the judicial review of whether an arbitral award implicates and violates public policy is necessarily de novo review. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 418, 747 A.2d 1017 (2000). "Where there is no clearly established public policy against which to measure the propriety of the arbitrator's award, there is no public policy ground for vacatur. If, on the other hand, it has been determined that an arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy. We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does

in fact violate public policy." Id., 429. Our decision in the present case stands in accordance with *Schoonmaker* and its newly articulated standard of review.

Here, the defendant argues that the trial court improperly granted the plaintiff's application to vacate the arbitrator's award. The defendant claims that the trial court exceeded its authority and "placed itself in the role of the arbitrator and issued its own opinion as to whether the [plaintiff] had just cause to terminate [Frederick]." The defendant argues that the trial court's decision is inconsistent with this court's traditional deference to arbitral authority and that the award does not meet the public policy exception articulated in § 52-418. Specifically, the defendant asserts that the award did not violate an explicit, well-defined and dominant public policy.

The plaintiff counters that the trial court properly vacated the award because it violated "the explicit, well-defined and dominant public policy of this state set forth in . . . § 53a-183 (a)." We agree with the plaintiff.

Here, the trial court set forth the "two-step analysis . . . often employed [in] deciding cases such as this. First, the court determines whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy." The trial court determined that Frederick's act of placing an anonymous, obscene and racist telephone call while on duty in a state correction facility, from a state owned telephone, was a violation of explicit public policy. This public policy is articulated in both § 53a-183, the offense for which Frederick was given accelerated rehabilitation, and the relevant regulations of the department of correction.[10]

---

[10] These directives are not in and of themselves determinative of public policy. Internal "practices and procedures may reflect public policy but those practices and procedures do not determine that policy." *South Windsor* v. *South Windsor Police Union*, 41 Conn. App. 649, 658, 677 A.2d 464, cert. denied, 239 Conn. 926, 683 A.2d 22 (1996). In the present case, these

We agree with the trial court that an explicit, well-defined and dominant public policy is identified here, wherein a state employee, while on duty, utilized a state owned telephone to place an anonymous, obscene and racist call. Accordingly, the first prong of the required inquiry is satisfied.

The trial court then proceeded to the second prong of the analysis: whether the arbitrator's award violated this clear public policy. The court noted that the arbitrator attempted to excuse Frederick's conduct "as the outgrowth of various personal stressors," but did "[find] that he did, in fact, leave the stipulated message for the legislator." Accordingly, the arbitrator justified reinstating Frederick despite his conduct, which violated both statute and department regulations. We agree with the trial court that, in doing so, the arbitrator "minimize[d] society's overriding interest in preventing conduct such as that at issue in this case from occurring." Thus, the award—with its inherent rationalization of conduct stipulated to by Frederick, which was violative of statute and regulations—is in itself violative of clear public policy. As the trial court aptly stated, the termination of Frederick as provided for in the department of correction regulations is "warranted . . . . A lesser sanction—a progressive sanction, as suggested by the arbitrator—would, very simply, send the message that stress, or poor judgment, or other factors, somehow renders the conduct permissible or excusable." We need not accept the trial court's statement that "[a]nything less than termination is not sufficient to uphold this important policy" as a generic endorsement of termination in all such cases. We do not hold that the violation of a criminal statute is a per se public policy violation sufficient to justify vacating an arbitrator's

regulations are not the sole expressions of dominant public policy. We conclude that these regulations properly reflect the public policy enunciated in § 53a-183.

decision. Instead, we conclude that this case poses a narrow, blatant example of the department of correction's proper exercise of its power to dismiss. Although the conduct demonstrated by Frederick is particularly offensive to an enlightened society, our decision here is dictated not by personal standards of decency, but by proper legal precedent that does provide, in this case, the just outcome.

Accordingly, we conclude that this case rests squarely within the narrow exception carved out of the broad authority granted to arbitrators. Here, the trial court properly concluded that an arbitration award violated a clearly defined public policy because the award reinstated a state employee whose conduct blatantly violated both a criminal statute and the employment regulations set forth by the department of correction. We conclude, therefore, that the trial court correctly vacated the arbitrator's award.

The judgment is affirmed.

In this opinion BORDEN, KATZ and CALLAHAN, Js., concurred.

PETERS, J., concurring in the result. I concur in the result. Whatever is the proper test for setting aside an arbitration award on public policy grounds, I agree with the outcome in this case. Under any standard, the facts found by the arbitrator in this case establish that the plaintiff, the state of Connecticut, was justified in discharging the employee who was the subject of the arbitration award.

Before the arbitrator, the defendant, the employee's union, conceded that, precisely as charged, the employee had left the stipulated message for the legislator. The arbitrator agreed with the state that leaving the message was unjustified. The arbitrator concluded, nonetheless, that he would reduce the sanction against

the employee from discharge to suspension. That conclusion was premised on a letter of apology written by the employee and a finding, by the arbitrator, of mitigating circumstances arising out of the employee's personal and family circumstances.

I agree that this court is not bound by arbitral finding of mitigating circumstances in light of the egregious nature of the employee's conduct. It is hard to imagine a more repugnant message than that left by the employee. The fact that this egregious misconduct concededly occurred while the employee was on the job distinguishes it from other cases of employee misconduct in which courts have upheld arbitral awards that reduced sanctions against employees from discharge to suspension. See, e.g., *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); *Bureau of Special Investigations* v. *Coalition of Public Safety*, 430 Mass. 601, 722 N.E.2d 441 (2000); *New York State Correctional Officers & Police Benevolent Assn., Inc.* v. *New York*, 94 N.Y.2d 321, 726 N.E.2d 462, 704 N.Y.S.2d 910 (1999) (all involving employee misconduct outside of work).

Accordingly, I respectfully concur in the result.