PRIVATE HEALTHCARE SYSTEMS, INC. *v.*
ALBERT J. TORRES
(AC 24589)

Dranginis, Flynn and Bishop, Js.

Argued June 9—officially released September 7, 2004

*Elloitt B. Pollack,* with whom, on the brief, were *Michael A. Kurs* and *Jaclyn C. Petrozelli,* for the appellant (defendant).

*Nicholas P. Hansen,* pro hac vice, with whom, on the brief, were *Sandra K. Davis* and *Steven A. Klenda,* pro hac vice, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The question presented in this appeal is whether an arbitration award that orders a managed health care provider to reinstate a surgeon to its roster violates public policy, when, five years earlier, the surgeon had used credit card information from confidential hospital patient files to make telephone calls to adult entertainment venues, but has since been rehabilitated and poses no present threat to the managed health care provider or to the community. Because we believe that such an award does not violate public policy, we reverse the judgment of the trial court vacating the award.

The record reveals the following procedural history and underlying facts, which are undisputed. The defendant, Albert J. Torres, a surgeon, has practiced medicine since 1982. At all times germane to this appeal, he has been a member of the medical staff at Charlotte Hungerford Hospital in Torrington. During a period of two weeks in January, 1998, Torres accessed credit card information from confidential patient files, which he used to make approximately twenty telephone calls to adult entertainment telephone numbers, billing those calls to the patients whose credit card numbers he had obtained. After that misconduct was discovered, Torres received a written reprimand and was fined $5000 by the state department of public health. He voluntarily surrendered his license to practice medicine in New York after an inquiry had been initiated there. He also was arrested and charged with larceny in the fifth degree, criminal impersonation and computer crime in the fifth degree. After Torres was granted accelerated rehabilitation and completed required counseling, the criminal charges against him were dismissed. He was neither discharged nor suspended from practice by the hospital or by the state.

The plaintiff, Private Healthcare Systems, Inc. (Healthcare), maintains a nationwide preferred provider network. In 1994, Torres signed a preferred physicians agreement with Healthcare that had the effect of permitting individuals insured through Healthcare to utilize Torres as a surgeon. The term of the contract between Torres and Healthcare was for one year, with automatically renewable successive terms. The contract contained various provisions relating to the termination of Torres from participation in the network. It also included appeal provisions available to a provider who has been terminated from participation. In 2001, in conjunction with a routine review of Torres' credentials, Healthcare learned of Torres' previous miscon-

duct and the responses of the licensing agencies of Connecticut and New York. After Healthcare notified Torres of its intention to terminate its contract with him, Torres invoked the contract's appeal procedures, which ultimately led to an arbitration hearing.

In his award, the arbitrator ordered Healthcare to restore Torres to its provider roster, finding that Torres had been rehabilitated and that "[t]here is no evidence that he is less than an exemplary surgeon, poses any risk as a caregiver, or is likely to engage again in conduct that in January, 1998, could be described as stupid and aberrant as well as criminal." In making that finding, the arbitrator credited testimony that, at the time of his misconduct, Torres was suffering from a temporary mental illness from which, with the assistance of counseling, he had been cured. With respect to the contract between Healthcare and Torres, the arbitrator found that even though the contract provided that either party was entitled to terminate the contract with or without cause upon written notice to the other, considerations of public policy required that the contract could only be terminated for cause. As to the parties' responsibilities under the contract, the arbitrator found that the failure of Torres to notify Healthcare of his misconduct did not constitute a material breach, but that Healthcare violated the covenant of good faith and fair dealing implicit in its agreement with Torres. Concluding that Torres "has long since been rehabilitated and poses no risk to [Healthcare] and the community" and that "[n]o strong public policy . . . justifies terminating him," the arbitrator overturned Healthcare's termination of its agreement with Torres and ordered that he be "recredentialed and fully reinstated to the [Healthcare] roster" of preferred care providers.

In its application to the Superior Court to vacate the arbitration award, Healthcare claimed that the award violated public policy and that the arbitrator's interpre-

tation of the contract between Healthcare and Torres disregarded established law. Specifically, Healthcare alleged that "[t]he arbitrator's award violates Connecticut's explicit, well-defined and dominant public policy against theft, and manifestly and egregiously disregards Connecticut law."

In its memorandum of decision granting Healthcare's application to vacate the arbitration award, the court noted that because the submission to the arbitrator by the parties had been unrestricted, it was bound by the arbitrator's legal and factual determinations and that, under the circumstances of this case, the award could be vacated only if it violated a clear public policy. The court concluded that the award violated the state's clear and explicit public policy against theft as evidenced by its statutes making larceny a crime, and that the arbitrator essentially rationalized Torres' misconduct by attributing it to a temporary mental illness. Accordingly, the court vacated the arbitration award. This appeal followed.

On appeal, Torres argues that the court incorrectly vacated the arbitration award because enforcement of the award violates no clear public policy. In response, Healthcare asserts that the court correctly determined that enforcement of the award would violate the state's manifest policy against theft. In the alternative, Healthcare urges us to affirm the court's judgment on the basis that in making his award, the arbitrator egregiously disregarded well settled contract law.

We begin our analysis by noting that when a party appeals a judgment vacating an arbitration award on the basis of public policy, our review is de novo. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000). Because in this instance the court concluded that the award violated the state's public policy against theft, our review is de novo.

We note as well that in conducting our review, we are not concerned with whether the award is correct, but rather, with whether it can be lawfully enforced. *State v. AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 474–75, 747 A.2d 480 (2000).

Even though our review of the court's judgment is de novo, the scope of our review is narrowly tailored to reflect the court's traditional support for arbitration as a favored means of settling private disputes. See *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Thus, in confronting a claim that an award violates public policy, the award should not be disturbed on that ground unless the award clearly violates a strong public policy. *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663*, 257 Conn. 80, 90, 777 A.2d 169 (2001). As our Supreme Court has stated: "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . [T]he public policy exception to arbitral authority [however] should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Internal quotation marks omitted.) Id., 90–91; see also *State* v. *New England*

*Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 783, 830 A.2d 729 (2003).

With those precepts in mind, we turn to Torres' claim that the court incorrectly determined that the arbitral award ordering, inter alia, Torres' reinstatement to Healthcare's preferred provider roster violates public policy. We agree with the court's conclusion that our state has a well defined public policy against theft. In that respect, the court correctly referenced provisions of our Penal Code that criminalize larcenous conduct. Our state, however, does not have a public policy against the reemployment or continuation of employment of those who have committed criminal misconduct. Our Supreme Court expressly has declined to hold that an arbitral award mandating the return to work of one who has acted criminally is a per se violation of public policy. In *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 477–78, our Supreme Court stated: "We do not hold that the violation of a criminal statute is a per se public policy violation sufficient to justify vacating an arbitrator's decision." Thus, while theft clearly violates public policy, enforcement of an award that orders reinstatement of one who has stolen is not a per se violation of public policy. To the contrary, in the employment context, it is the express policy of this state to encourage employers to give favorable consideration to providing jobs to qualified individuals who may have criminal convictions. General Statutes § 46a-79.

We recognize, however, that this policy is not invariably manifest or controlling. Our Supreme Court in *Groton v. United Steelworkers of America*, 254 Conn. 35, 46–47, 757 A.2d 501 (2000), held that an arbitral award that ordered the town to reinstate an employee who had been convicted of stealing funds from the town violated the clear public policy against embezzlement. The court stated that the public policy against embezzle-

ment "encompasses the policy that an employer may not be required to reinstate the employment of one who has been convicted of embezzlement of his employer's funds, whether that conviction follows a trial, a guilty plea, or a plea of nolo contendere." Id. The court's holding was premised on the notion that an employer has a legitimate expectation of trust that is inherent in the employment context and would be severely undermined by requiring the reinstatement of an employee convicted of embezzling his employer's funds. Id., 47–48.

Similarly, in *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO,* 59 Conn. App. 793, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000), this court affirmed the trial court's judgment vacating, on public policy grounds, an arbitration award that ordered the reinstatement of a former driver for the department of children and families who had been terminated after having been convicted of possession of narcotics with intent to sell. The trial court had determined that the award violated the state's policy of protecting children from harm. We held that the union could not prevail on its claim that the trial court improperly vacated the award as violative of public policy on the basis that "ample sources exist[ed] that clearly show that the protection of children, particularly those in the department's care, is a clear, well-defined, dominant and compelling public policy of this state." Id., 798. We further concluded that the award of reinstatement conflicted with that policy because it would expose children "to precisely the type of individual, influences and behavior from which the department is charged with protecting them." Id., 805.

Finally, in *State* v. *AFSCME, Council 4, Local 387, AFL-CIO,* supra, 252 Conn. 467, which also involved a public employee, our Supreme Court upheld the judgment of the trial court vacating an arbitration award in which an arbitrator had ordered the reinstatement of

a correction officer who had made an obscene and racist telephone call to a public official, from a state owned telephone, while on duty in a correctional facility. In that case, the court determined that by making an obscene and racist telephone call, the correction officer had violated a clear public policy against harassment as evinced by General Statutes § 53a-183. Id., 476–77. The court further determined that the arbitral order reinstating the offending correction officer to duty on the basis that his conduct was merely the result of personal stressors, constituted a rationalization of serious misconduct and a subordination of the public's interest as reflected in our Penal Code and the regulations of the department of correction. Id., 477. As such, the court found that the award violated public policy. Id., 478.

Although we find the cases discussed previously instructive, none are controlling in the present case. At the outset, we note that, unlike the present case, in each of those cases, the arbitration procedure was invoked after the governmental entity had terminated the public employee. Here, the record reveals that Torres has remained on staff at the hospital without abatement and without any disciplinary response from the hospital, except urging by hospital leadership that Torres receive appropriate counseling. Also, in none of those cases is it apparent that the arbitrator made a factual finding that the misconduct was the result of a mental illness from which the offender had recovered. In this case, however, the arbitrator found that as a result of counseling, "by August, 1998, Dr. Torres was cured of the emotional illness which could affect his performance as a doctor and that he no longer presented any risk of recidivism." We also attach significance to the arbitrator's finding that Torres had been fully rehabilitated from his "aberrant" behavior. Specifically, the arbitrator determined that Torres "has long

since been rehabilitated and poses no risk to [Healthcare] and the community."

An assessment of whether an arbitration award violates public policy involves a two step analysis. *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 476. "First, the court determines whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy." (Internal quotation marks omitted.) Id. Here, there can be no question that Torres' behavior in utilizing patient records to access their credit card numbers and then using those numbers to make telephone calls to adult entertainment venues violated a clear public policy against theft. As we previously have noted, an arbitral decision may not be vacated solely because it orders the reinstatement of one who has committed a criminal offense. Id., 477–78. The decisions in each of the three public employment cases noted previously turned on the court's assessment of whether the reinstatement of the subject employee violated public policy.

In order to overturn an arbitrator's award, the court must find that adherence to the award itself would violate public policy. Id., 476. That brings us to the ultimate and dispositive issue of whether an arbitration award that orders a surgeon reinstated to a managed health care provider's preferred provider roster violates public policy where five years earlier, the surgeon had committed criminal misconduct as a result of a mental illness from which he has since become fully rehabilitated. Because we are aware of no clear public policy violated by such an award, we conclude that the court incorrectly vacated the arbitration award. Additionally, we are persuaded that the award comports with a public policy favoring the employment of individuals who have been rehabilitated following their criminal misconduct. Although Torres does not have a criminal record, the

policy reflected in General Statutes § 46a-79, favoring the rehabilitation and reemployment of criminal offenders is at least as applicable to those who have been charged with, but not convicted of, criminal misconduct, as to those who have been both charged with and convicted of criminal misconduct. Thus, not only does the arbitration award not clearly violate public policy, but restoration of Torres to Healthcare's roster of providers furthers a public policy of encouraging the employment of those who have been rehabilitated from their past criminal conduct.

We turn next to Healthcare's argument that the judgment of the court may be affirmed on the alternate ground that the arbitrator's award ordering the reinstatement of Torres constituted a manifest disregard of clearly established and applicable law. At the outset, we note, that in its memorandum of decision vacating the arbitration award, the court characterized this alternate ground as an attack on the arbitrator's factual and legal conclusions. Having made that determination, the court declined to review this portion of Healthcare's claim because of the law's deference to an arbitrator's factual and legal conclusions when, as here, the submission to arbitration is unrestricted.

Although we agree with the court's premise, we address this issue because it can fairly be read as a claim, pursuant to General Statutes § 52-418 (a) (4), that the award reflects a manifest disregard of the law, and not merely an incorrect application of the law.[1] Traditionally, in the case of an unrestricted submission, our courts "have . . . recognized [only] three grounds

---

[1] In light of the fact that the assessment of whether the arbitrator's award reflects a manifest disregard of the law requires, in effect, de novo judicial review; *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 789, 830 A.2d 729 (2003); in the spirit of judicial economy, we decide this issue rather than remanding it to the trial court for further proceedings.

for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 6. Section 52-418 authorizes a court to vacate an arbitration award if the court finds any of the following defects: "(1) . . . the award has been procured by corruption, fraud or undue means; (2) . . . there has been evident partiality or corruption on the part of any arbitrator; (3) . . . the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) . . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

That last statutory proscription is implicated by Healthcare's assertion that the award reflects a manifest disregard of the law. In *Garrity*, our Supreme Court noted that an arbitrator's egregious misperformance of duty may warrant vacatur of an award, recalling an example from an earlier decision that "[i]f the memorandum of an arbitrator revealed that he had reached his decision by consulting a ouija board, surely it should not suffice that the award conformed to the submission." (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 8. Thus, the court has placed a judicial gloss on § 52-418 (a) (4) to permit a court to vacate an award on this ground if it reveals a manifest disregard of the law. The term "manifest disregard of the law," however, has been narrowly defined. In *Garrity*, the court, by implication, adopted the language of an opinion of the United States Court of Appeals for the Second Circuit in which that court

defined "manifest disregard of the law" as meaning "more than error or misunderstanding with respect to the law." (Internal quotation marks omitted.) Id., 8–9, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker*, 808 F.2d 930, 933 (2d Cir. 1986). The Second Circuit further stated: "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term disregard implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. . . . Judicial inquiry under the manifest disregard standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it." (Internal quotation marks omitted.) Id., 9, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker*, supra, 808 F.2d 933–34.

Applying the reasoning of the Second Circuit, the court in *Garrity* stated: "We conclude, therefore, that an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 10.

Although in its application to vacate the arbitrator's award, Healthcare characterized the award as a mani-

fest disregard of the law, close scrutiny of the underlying claims reveals that Healthcare's criticism of the arbitrator's findings are no more than an argument that the arbitrator's award was legally incorrect. Healthcare took issue with the arbitrator's finding that Torres had become rehabilitated from a mental illness, claiming that in doing so the arbitrator ignored the Supreme Court's ruling in *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 477, in which the court held that a finding of "personal stressors" was an inadequate justification for misconduct of a correction officer who had made a racist and obscene telephone call from his place of work. In making that argument, Healthcare has incorrectly equated personal stressors to mental illness. Additionally, Healthcare has ignored the significant differences between that case and the present case, in which the arbitrator made a finding that Torres was fully rehabilitated from the mental illness that produced his aberrant behavior. The arbitrator's finding regarding the existence and temporality of Torres' mental illness, while arguably subject to debate among reasonable jurists, does not manifest a disregard of the law or the facts adduced at the arbitration hearing.

In its application to vacate the award, Healthcare also raised issues of contract interpretation, claiming that the arbitrator misapplied the law regarding the covenant of good faith and fair dealing and its right to terminate Torres for his violation of public policy. Even if Healthcare is legally correct in some or all of its argument that the arbitrator's award was not legally correct, it has not set forth any basis for a determination that any legal or factual mistakes made by the arbitrator reflect a manifest disregard of the law. In short, although Healthcare has characterized the arbitrator's alleged legal mistakes as a manifest disregard of the law, a fair reading of the legal allegations in its petition to vacate the award leads us to the view that Healthc-

are's attack is no more than an assault on the legal correctness of the award. On the basis of our review of the award, we conclude that, in formulating his award, the arbitrator did not manifestly disregard the clear law pertinent to the issues he was required to decide.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's application to vacate the arbitration award.

In this opinion DRANGINIS, J., concurred.

FLYNN, J., dissenting. I respectfully disagree with the majority opinion and would affirm the thoughtful decision of the trial court.

I begin by citing the principle that "[i]t is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree." *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 755, 628 A.2d 1298 (1993); so long as the contract does not violate any law or public policy. *CMG Realty of Connecticut, Inc.* v. *Colonnade One Ltd. Partnership*, 36 Conn. App. 653, 660–61, 653 A.2d 207 (1995). So too were these parties free to contract.

The plaintiff, Private Healthcare Systems, Inc. (Healthcare) and the defendant, Albert J. Torres, freely bargained for a contract that allowed Healthcare to terminate for *any* reason upon ninety days notice and that contained a separate provision permitting termination for breach of moral conduct relating to the practice of medicine. The arbitrator improperly determined, inter alia, that "[n]o strong public policy here justifies terminating him." Theft of patient moneys *does* violate a strong public policy against stealing.

"Although the power of the courts to invalidate the bargains of parties on grounds of public policy is

unquestioned and is clearly necessary, the impropriety of a transaction should be convincingly established in order to justify the exercise of the power. This is so because public policy also requires that parties of full age and competent understanding must have the greatest freedom of contracting, and contracts, when entered into freely and voluntarily, must be upheld and enforced by the courts." 5 S. Williston, Contracts (4th Ed. 1993) § 12:3, pp. 675–81. These principles apply to arbitrators as well as the courts.

Dr. Torres admitted that, while under a contract with the plaintiff to provide medical care to its insureds, for a period of approximately two weeks in January, 1998, he stole confidential computerized patient information, which he was able to access as a physician with privileges at Charlotte Hungerford Hospital in Torrington. He then used this information to bill patients' credit card accounts for approximately twenty telephone calls that he made to adult entertainment 900 telephone numbers. He also admitted that his theft and misuse of this data resulted in his arrest.

The court found that Dr. Torres had access to this data by virtue of his access to a computer in the doctors' lounge of the hospital. As a result of the theft, Dr. Torres was fined $5000 and reprimanded by the state department of public health, and, after the state of New York initiated reciprocal proceedings, Dr. Torres voluntarily surrendered his New York license to practice medicine.

Healthcare maintains a preferred provider network, and, in 1994, Dr. Torres signed an agreement becoming a participating physician in this network. Healthcare effectively terminated Dr. Torres on January 1, 2002, "for conduct at variance with normal accepted moral behavior." The parties then entered arbitration, resulting in an award that overturned the contractual

termination of Dr. Torres by Healthcare. The arbitrator held that Healthcare's termination of Dr. Torres violated the covenant of good faith and fair dealing implicit in the contract and that the contractual provision allowing either party to terminate with or without cause violated public policy because public policy required that there be good cause for termination. Additionally, the arbitrator held that there was no material breach of the contract by Dr. Torres, despite the doctor's admission that he stole confidential patient information, used patients' credit card numbers to telephone adult entertainers and never notified Healthcare of his arrest as his contract required.

The arbitrator, in part, rested his decision on public policies supporting the rehabilitation of physicians. The award justifies, in effect, vacating the contractual right Healthcare had under "Credentialing Criteria" to terminate a physician who has "engaged in conduct that is at variance with generally accepted moral behavior."

"The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. . . . The impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 376–77, 321 A.2d 444 (1973).

The court properly vacated the arbitrator's award on the basis that the award violated clear public policy against stealing the property of others, particularly

when the theft is from persons to whom a physician is obligated to do no harm. The General Assembly has seen fit to adopt eighteen separate statutes prohibiting and penalizing various forms of larceny. See General Statutes § 53a-118 et seq. Although our common law and statutes generally limit punitive damages to no more than attorney's fees and costs, in enacting its strong policy against theft, the General Assembly has seen fit to provide for a civil remedy of treble damages for theft. See General Statutes § 52-564.

The court correctly determined that the arbitrator's award, overturning the termination of the preferred physicians agreement by Healthcare and ordering that Dr. Torres be recredentialed as a member of Healthcare's preferred provider network, should be set aside for contravening our General Assembly's strong public policy criminalizing and discouraging theft.

Accordingly, I dissent.