STATE OF CONNECTICUT *v.* AFSCME, COUNCIL 4, LOCAL 391
(AC 30857)

Beach, Robinson and Borden, Js.

Argued September 15—officially released December 7, 2010

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellant (defendant).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The defendant union, AFSCME, Council 4, Local 391, appeals from the judgment of the trial court granting the application of the plaintiff, the state of Connecticut, to vacate an arbitration award. The defendant claims that the court improperly (1) vacated

the arbitration award on the ground that it violated public policy and (2) considered a letter from the commissioner of correction (commissioner) in vacating the award. We affirm the judgment of the trial court.

An arbitrator made an award reinstating the grievant, Scott Gamache, to his employment with the plaintiff. The plaintiff applied to the court to vacate the award, and the defendant thereafter filed a motion to confirm the award. The court granted the plaintiff's application to vacate and denied the defendant's motion to confirm. This appeal followed.

The following undisputed facts and procedural history are relevant to our resolution of the defendant's appeal. The plaintiff and the defendant entered into a collective bargaining agreement effective December 2, 2004, through June 30, 2008. On December 5, 2005, the grievant, a correctional officer employed by the department of correction (department) and member of the bargaining unit represented by the defendant, was discharged from his employment for allegedly engaging in an open pattern of sexual harassment in knowing violation of the department's administrative directive 2.2.[1] The defendant filed a grievance against the plaintiff, and the parties submitted the controversy to arbitration pursuant to the terms of the collective bargaining agreement. The parties joined in framing the following issue to be submitted to the arbitrator: "Was the dismissal of the [g]rievant for just cause? If not, what shall be the remedy consistent with the [collective bargaining agreement]?"

---

[1] Administrative directive 2.2 provides in relevant part: "It is the policy of the [d]epartment to provide its employees with a workplace free of sexual harassment, retaliation and related misconduct. The [d]epartment shall investigate and provide appropriate discipline, remedial measures and resolution for each complaint and each reported violation of this policy. Any employee who engages in conduct prohibited by this policy will be subject to discipline, up to and including termination. . . ."

On September 20, 2007, following a five day hearing, the arbitrator issued an arbitration award that reduced the grievant's dismissal to a one year suspension from his position without pay or benefits. Specifically, the award provided: "The dismissal of the [g]rievant was not for just cause. The dismissal is reduced to a suspension of [the] [g]rievant from December 5, 2005, to December 5, 2006. Said suspension shall be without pay and benefits. [The] [g]rievant is hereby reinstated as of December 6, 2006, to the position he held at the time of his termination. He shall be paid the wages that would have been due an employee in the position to which [the] [g]rievant is being reinstated commencing on December 6, 2006, less any earnings [the] [g]rievant received from December 6, 2006 to the date he actually returns to work. . . . [The] [g]rievant shall return to his position within thirty (30) days of the date of this [a]ward."

In reaching his decision, the arbitrator also set forth the following factual findings: "[The] [g]rievant in this matter was disciplined by way of termination because of his violation of [a]dministrative [d]irective 2.2 . . . . The actions allegedly committed by [the] [g]rievant were verbal comments made about [the] [c]omplainant[2] in this matter and other individuals. Some of the comments referred to oral sex in reference to [the] [c]omplainant in this matter, which was done at his pleasure or as compensation for something [the] [c]omplainant wanted. Some of the actions charged against [the] [g]rievant involve [his] personal touching of [the] [c]omplainant. The comments and the physical touching were allegedly done publicly in front of other employees and inmates of the institution. The acts alleged . . . did not all happen at once, but it was alleged that the entire

---

[2] The complainant, Raymond D. Sayre, was a coworker of the grievant for seven months.

set of acts complained about . . . happened over a substantial period of time. . . .

"This [a]rbitrator does find that [the] [g]rievant knew about the [department's] zero tolerance [policy] in reference to [a]dministrative [d]irective 2.2. Because of that, discipline may be called for even though the alleged acts were only done once. One could find that some of the witnesses stretched the truth to some extent because of their own personal feelings either for or against [the] [g]rievant or [the] [c]omplainant in this matter. *This [a]rbitrator finds that the accusations made by [the] [c]omplainant are true and were substantiated by the witnesses presented by the [plaintiff]*; however, they were not sufficient to require the discipline given [the] [g]rievant. The [defendant] presented evidence of similar incidents as this case that established that the discipline given to [the] [g]rievant was too severe." (Emphasis added.)

Thereafter, the plaintiff filed this application to vacate the arbitral award pursuant to General Statutes § 52-418.[3] The plaintiff claimed that the enforcement of the award, inter alia, violated public policy referenced in Connecticut statutory and common law and disregarded "the managerial responsibility of the [plaintiff], as an employer" to enforce a "zero tolerance policy against sexual harassment in the workplace." In

---

[3] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

response, the defendant filed a motion to confirm the award pursuant to General Statutes § 52-417.[4]

The court, by memorandum of decision, granted the plaintiff's application to vacate the arbitrator's award and denied the defendant's application to confirm the award. The court first determined that there was a well-defined and dominant public policy against workplace sexual harassment as established by General Statutes § 46a-60 (a)[5] and administrative directive 2.2. The court also noted that the grievant was aware of the department's zero tolerance policy proscribing sexual harassment, "yet [he] repeatedly violated that policy over a long period of time. He continued his lewd and offensive conduct toward his fellow employee even after that employee asked him to stop." Finally, the court concluded that "[a]nything less than termination of the employment of [the grievant] would be insufficient to uphold the important public policy against workplace sexual harassment." Additional facts will be set forth as necessary.

[4] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[5] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (8) [f]or an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

I

The defendant first claims that the court improperly concluded that enforcement of the arbitration award would violate a clearly established public policy against workplace sexual harassment. We disagree.

We begin our analysis by setting forth the applicable law regarding our review of arbitral awards, as stated by our Supreme Court. "We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 . . . . A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . .

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted; internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 473–74, 747 A.2d 480 (2000). Additionally, "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 52, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

"Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], this

court listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418 (a). . . . The judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." (Internal quotation marks omitted.) *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 197, 947 A.2d 916 (2008). The issue raised in this appeal concerns the second recognized exception for vacating an arbitral award, namely, whether enforcement of the award reducing the grievant's dismissal to a one year suspension violates a clear and well-defined public policy.

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . [T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *State* v. *Connecticut State Employees Assn.*,

*SEIU Local 2001*, 287 Conn. 258, 272–73, 947 A.2d 928 (2008).

"A two-step analysis . . . [is] often employed [in] deciding cases such as this. First, the court determines whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy." (Internal quotation marks omitted.) Id., 273. In addition, "[w]hen a challenge to a voluntary arbitration award . . . raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review." (Internal quotation marks omitted.) *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663*, 257 Conn. 80, 90, 777 A.2d 169 (2001). Because the defendant's challenge raises such a claim, we undertake de novo review of the award. In this regard, we emphasize that in conducting our review, we are not concerned with the correctness of the arbitrator's decision; our concern is only whether the award can be lawfully enforced. *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 474–75.

A

The defendant claims that the first prong of the aforementioned test is not satisfied because the plaintiff failed to identify an explicit, well-defined and dominant public policy in our state against workplace sexual harassment. The plaintiff counters that such public policy is clearly defined by administrative directive 2.2 and § 46a-60 (a). We agree with the plaintiff that a well-defined and dominant public policy against sexual harassment in the workplace is explicitly discernable from Connecticut law.

Our courts "have looked to a variety of sources in determining whether an arbitral award violates a well-defined public policy, and have cited, as examples of

possible sources, statutes, administrative decisions and case law. . . . In those cases in which we have vacated an arbitral award on public policy grounds, the public policy has most commonly been grounded in the General Statutes." (Citation omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 657, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005).

In *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, supra, 287 Conn. 276–77, our Supreme Court specifically recognized a well-defined and dominant public policy against workplace sexual harassment as established by § 46a-60 (a) (8) (C), which proscribes hostile work environment sexual harassment. See footnote 5 of this opinion. The court reasoned that "the clear and unambiguous language of § 46a-60 (a) (8) (C) explicitly indicates that the maintenance of a hostile work environment constitutes sexual harassment and is prohibited by the laws of this state." *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, supra, 276–77. Accordingly, the court concluded that an "explicitly discernable" public policy against workplace sexual harassment was clearly defined and dominant under Connecticut law. Id., 277.

The defendant does not offer any argument refuting the precedential value of our Supreme Court's decision in *Connecticut State Employees Assn., SEIU Local 2001*. Instead, it maintains that § 46a-60 (a) is not relevant in this case because it does not govern the grievant's actions. Section 46a-60 (a), according to the defendant, only applies to the discriminatory practices of an employer and, therefore, does not extend to the actions of an employee.

The plain language of the statute, however, does not support such an interpretation. Section 46a-60 (a) (8)

expressly prohibits workplace sexual harassment "by [an] employer, *or the employer's agent* . . . ." (Emphasis added.) Consequentially, "[§] 46a-60 provides a cause of action, rooted in common law agency principles, on which to hold an employer liable for the conduct of its employees." (Internal quotation marks omitted.) *Boyles* v. *Preston*, 68 Conn. App. 596, 608, 792 A.2d 878, cert. denied, 261 Conn. 901, 802 A.2d 853 (2002). Moreover, our ultimate concern in this context is not whether, under applicable agency principles, the grievant's actions would be imputable to his employer. Our relevant inquiry is whether "the statute relied upon as a ground for the alleged public policy [is] too tenuously related to the subject matter to constitute a ground for a clearly defined and dominant public policy." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 660. We conclude that § 46a-60 (a) is sufficiently linked to the conduct of the grievant and, therefore, is adequate to establish a well-defined and dominant public policy against workplace sexual harassment in this case.[6]

B

We next consider the second prong of our inquiry, namely, whether the arbitral award reinstating the grievant to his position as a correctional officer, following a one year unpaid suspension, would violate this state's clear public policy against workplace sexual harassment. The defendant claims that, even if § 46a-60 (a) identifies a strong public policy against workplace sexual harassment, the plaintiff has not met its burden of demonstrating that the enforcement of the arbitral award clearly violates that policy. We are not persuaded.

---

[6] Because we conclude that § 46a-60 (a) identifies a clear public policy against workplace sexual harassment, we need not decide whether administrative directive 2.2 identifies the same.

Once it has been determined that an arbitral award implicates a well-defined and dominant public policy, "the ultimate question remains as to whether the award itself comports with that policy." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000). "Our analysis of this issue is confined to the facts as found by the arbitrator." *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, supra, 287 Conn. 277.

As set forth previously, the arbitrator found that the grievant directed lewd, sexually explicit comments toward his coworker. Specifically, the arbitrator explained that these comments referred to his coworker performing oral sex for his own pleasure and in a quid pro quo exchange for something he wanted. Additionally, the arbitrator found that the grievant engaged in the unwanted physical touching of his coworker. The arbitrator noted that the lewd comments and unwanted touching were done publicly in front of other employees and inmates at the correctional institution. Moreover, the acts complained of did not emanate from a single occurrence but, instead, happened over a substantial period of time. As we explain below, in light of the egregious nature of this conduct, we conclude that the court properly vacated the arbitral award at issue, as the reinstatement of the grievant as a correctional officer would frustrate this state's strong public policy against workplace sexual harassment.

It is undisputed that the department had implemented a zero tolerance position with respect to workplace sexual harassment, as reflected by administrative directive 2.2. See footnote 1 of this opinion. Equally undisputed, and supported by the record before us, is that the grievant openly and knowingly violated this directive on multiple occasions. "The law is clear that an employer may not stand by and allow an employee to be subjected to a course of . . . [sexual] harassment by co-workers

. . . . Accordingly, an employer will be held liable for harassment perpetrated by its employees if the employer provided no reasonable avenue for complaint, *or* . . . the employer knew (or should have known) of the harassment but unreasonably failed to stop it. . . . Put another way, once an employer has knowledge of a racially [or sexually] combative atmosphere in the work-place, he [or she] has a duty to take reasonable steps to eliminate it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 167–68, 717 A.2d 1254 (1998). Although the plaintiff contends that the grievant's one year suspension was sufficient to uphold the department's policy against sexual harassment, we disagree and conclude that his reinstatement would seriously undermine the plaintiff's responsibility to provide a sexually nonhostile work environment.

In *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 887 A.2d 394 (2005), this court reviewed an arbitral award that reinstated a police officer to his position with a municipal police department. The officer's employment had been terminated following a series of complaints related to his sexually harassing behavior.[7] Id., 726. Affirming the trial court's vacatur of that arbitral award, we concluded that the reinstatement of the officer to the police force was at odds with established federal law that imposed liability against municipalities and their agents for civil rights violations. Id., 739, 742. We reasoned that because the municipality was "potentially liable . . . for the [officer's] actions and its failure to take remedial steps to prevent a police officer from engaging in harassment and misconduct,

[7] Specifically, several women complained of incidents involving the officer's inappropriate language and conduct, including his use of sexual language, unwanted touching of their buttocks, harassment with a police car's flashing lights and the observation of one of the women while she was getting out of a shower. *Board of Police Commissioners* v. *Stanley*, supra, 92 Conn. App. 726.

particularly when there [was] a pattern of such inappropriate behavior," our enforcement of an arbitral award reinstating the officer "would violate federal policies encouraging municipalities to remedy and to prevent constitutional violations by their employees." Id., 742–43. This reasoning applies with equal force in the present case; our enforcement of the arbitral award reinstating the grievant as a correctional officer would be inconsistent with antidiscrimination laws that encourage employers to take reasonable steps to combat sexual harassment perpetuated by employees that creates a hostile work environment. See *Newsday, Inc.* v. *Long Island Typographical Union, No. 915, CWA, AFL-CIO*, 915 F.2d 840, 845 (2d Cir. 1990) (arbitral award reinstating employee, discharged for sexually harassing female coworkers, in conflict with employer's "legal duty to eliminate sexual harassment in the work place"), cert. denied, 499 U.S. 922, 111 S. Ct. 1314, 113 L. Ed. 2d 247 (1991).

Although the defendant raises several cases that highlight our traditional deference to the determinations of arbitrators, we agree with the court that this particular case "poses a narrow, blatant example of the department of correction's proper exercise of its power to dismiss." *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 252 Conn. 478. Permitting the arbitrator to circumvent the disciplinary actions of the department not only undermines the enforcement of its zero tolerance policy against workplace sexual harassment but also countermands the "great deference [afforded] to prison administrators in their operation and management of correctional facilities." *Beasley* v. *Commissioner of Correction*, 50 Conn. App. 421, 426, 718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999). Moreover, "[t]he fact that this egregious misconduct concededly occurred while the employee was on the

job distinguishes it from other cases of employee misconduct in which courts have upheld arbitral awards that reduced sanctions against employees from discharge to suspension." *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, supra, 479 (*Peters, J.*, concurring in the result).[8] Applying these principles, we conclude that, on the basis of the findings set forth by the arbitrator, the court properly concluded that the defendant sustained its burden of establishing that the arbitral award in this case violated an explicit, well-defined and dominant public policy against workplace sexual harassment.

II

We turn next to the defendant's claim that the court improperly considered a letter from the commissioner in vacating the arbitral award. We disagree.

The following additional facts are relevant to our analysis. On or about January 22, 2008, the plaintiff filed a memorandum of law in support of its application to vacate the arbitral award that reinstated the grievant.[9] Attached to that memorandum was a copy of a letter that was written from the commissioner to the office of the attorney general, dated October 29, 2007, requesting permission to vacate the award. That letter contained the commissioner's version of the testimony as elicited at the arbitration hearing and provided direct quotations of the sexually explicit comments made by the grievant,

---

[8] Our reference to the fact that the grievant's actions took place in the workplace is not meant to imply that serious misconduct that occurs while employees are off duty cannot also form the basis for a finding that public policy has been violated. See *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 803–804, 758 A.2d 387 (fact that criminal conduct took place outside workplace not dispositive of whether employee's reinstatement violated public policy), cert. denied, 255 Conn. 905, 762 A.2d 910 (2000).

[9] The plaintiff had filed its application to vacate the award on October 22, 2007.

described in greater detail his unwanted lewd touching and expressed her own views on the severity of his misconduct.[10]

The defendant, in its opposition memorandum, made no objection to the plaintiff's attachment of the commissioner's letter, nor was there any request at oral argument before the trial court that it be stricken from the record. The court, thereafter, recited those pertinent portions of the letter verbatim in the factual background section of its memorandum of decision.

[10] The letter provided in relevant part: "During the arbitration, the [c]omplainant testified to his statement that [the grievant] stated to him, 'Hey Homo it's about time you came downstairs and stop sucking cock.' He also testified that six weeks after that when he was at the med box in the pharmacy he felt something touch his buttocks, he jumped and turned around and [the grievant] had a banana held at his crotch area, and made the statement in front of a witness, 'he jumped like a girl.' The [c]omplainant went on to testify to his statement that at least [thirty] times [the grievant] called him a 'ripper.' The [c]omplainant didn't know what that meant, and asked another employee what it meant and was told it meant 'child molester.' He confronted [the grievant] and asked him to stop making those statements, but [the grievant] continued. The [c]omplainant bought a parrot from another coworker, [the grievant] overheard the conversation and later in the shift asked the [c]omplainant, 'what did you have to do for the bird, give him a blow job.' [The grievant] on other occasions also made comments about the [c]omplainant and a co-worker because they lifted weights together, and asked the [c]omplainant, 'what do you guys do there grab each others crank.' Witnesses corroborated that they overheard many of these comments. . . .

"The actions of [the grievant] most clearly violated our zero-tolerance policy in a most severe manner. The violations of public policy and the actions by [the grievant] were confirmed to have occurred in the [a]rbitrator's findings. There has not been any case that rises to the level of these violations since the zero-tolerance went into effect. In effect the [a]rbitrator imposed his standards into a case that clearly warranted dismissal given the clear forewarning to which [the grievant] admitted having knowledge. Enforcement of the award would violate an explicit, well defined and dominant policy of our department warranting dismissal of employees who engage in [that] behavior . . . which is wholly incompatible with continued employment by the [s]tate. Anything less than dismissal, for repeated willful misconduct in the comments that were made, the physical action of shoving the banana in the [c]omplainant's buttocks while making comments about his sexual preference, is not sufficient to uphold this important policy. To that end, we are requesting vacature of this award."

On appeal, the defendant claims that the court improperly considered the commissioner's letter in granting the plaintiff's application to vacate the arbitral award. Specifically, the defendant contends that, in reaching its conclusion that the award violated clear public policy, the court improperly relied on certain facts that were not a part of the record at the arbitration hearing.

Although we are mindful that "courts are bound by the arbitrator's factual findings when reviewing a claim that an award violates public policy"; *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, supra, 287 Conn. 204; we stress that, as set forth previously, appellate review of such a claim is de novo. The trial court's findings, therefore, are not entitled to deference on appeal, and, instead, our conclusions must be supported by the arbitrator's factual findings. See *Enfield* v. *AFSCME, Council 4, Local 1029*, 100 Conn. App. 470, 479, 918 A.2d 934, cert. denied, 282 Conn. 924, 925 A.2d 1105 (2007). As we made clear in part I B of this opinion, our conclusion that the court properly determined that the arbitral award in this case violated clear public policy was reached on the basis of the findings as set forth by the arbitrator. Accordingly, we conclude that the facts in the arbitral record, irrespective of the commissioner's letter, adequately supported the court's ultimate legal conclusions.

The judgment is affirmed.

In this opinion the other judges concurred.